FILED
IN CLERKS OFFICE

2005 NOV 30  P 12: 53

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Fit Tech, Inc., Planet Fitness Center, Inc.,
Planet Fitness Center of Maine, Inc., Planet
Fitness Center of Dartmouth, Inc., Planet
Fitness Center of Salem, Inc., Planet Fitness
Center of Brighton, Inc., Stratford Fitness
Center, Inc., David B. Laird and Scott G. Baker,

Plaintiffs,

-v-

Bally Total Fitness Holding Corporation,
Holiday Universal, Inc., Paul Toback,
Lee Hillman and John Dwyer,

Defendants.

C.A. No. 05-10471 MEL

## LEE S. HILLMAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
(212) 504-6000

Gelb & Gelb LLP
20 Custom House Street
Boston, Massachusetts 02110
617-345-0010

Attorneys for Defendant Lee S. Hillman

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

    A.    The Parties ...........................................................................................2

    B.    The Purchase Agreement ....................................................................3

    C.    Plaintiffs' Allegations And Claims......................................................4

    D.    Mr. Hillman's Limited Contacts With Plaintiffs ................................7

ARGUMENT.....................................................................................................................8

POINT I       THE COURT HAS NO PERSONAL JURISDICTION OVER MR.
            HILLMAN UNDER THE MASSACHUSETTS LONG-ARM STATUTE ...........9

    A.    Mr. Hillman Did Not "Transact Business" In Massachusetts...................................9

    B.    Mr. Hillman Did Not Cause Tortious Injury
         By An Act Or Omission In Massachusetts ...........................................................11

POINT II      THE COURT HAS NO PERSONAL JURISDICTION OVER
            MR. HILLMAN UNDER THE UNITED STATES CONSTITUTION ...............13

    A.    Mr. Hillman Is Not Subject To General Jurisdiction In Massachusetts ...............13

    B.    Plaintiffs Cannot Establish Specific Jurisdiction Over Mr. Hillman.....................14

        1.    This Lawsuit Does Not "Arise Out Of, Or
             Relate To," Mr. Hillman's Activities In Massachusetts ............................14

        2.    Mr. Hillman's In-State Contacts Do Not Represent A "Purposeful
             Availment" Of The  Privilege Of Doing Business In Massachusetts ........16

        3.    Exercise Of Jurisdiction Over Mr. Hillman Would
             Be Unreasonable Under The "Gestalt Factors" .........................................17

CONCLUSION...................................................................................................................18

## TABLE OF AUTHORITIES

### Cases

*Barrett v. Lombardi*, 239 F.3d 23 (1st Cir. 2001)..............................................................................8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).........................................................16, 17

*Calder v. Jones*, 465 U.S. 783 (1984).....................................................................................16, 17

*Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147 (D. Mass. 2001) ...................................12

*Chlebda v. H. E. Fortna & Bro. Inc.*, 609 F.2d 1022 (1st Cir. 1979)...............................................9

*Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 376 N.E.2d 548 (1978) .............10, 11

*Ealing Corp., v. Harrods Ltd.*, 790 F.2d 978 (1st Cir 1986) .........................................................12

*Greenery Rehab. Group v. Antaramanian*, 36 Mass. App. Ct. 628, N.E.2d 1291
(Ct. App. 1994) ...............................................................................................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...................................13

*Intech, Inc. v. Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 826 N.E.2d 194 (2005)........8, 11

*Interface Group-Mass., LLC, v. Rosen*, 256 F. Supp. 2d 103 (D. Mass. 2003)....................... 14-15

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .........................................................13

*LaForest v. Ameriquest Mtg. Co.*, 383 F. Supp. 2d 278 (D. Mass. 2005) ...............................11, 18

*LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296
(D. Mass. 2002)........................................................................................................ 8-9, 10, 14, 16

*Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111 (1st Cir. 1997) .....................................10

*Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26
(1st Cir. 1998) .................................................................................................................................13

*Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972).........................................................11

*Noonan v. Winston Co.*, 902 F. Supp. 298 (D. Mass. 1995)...........................................................13

*REMF Corp. v. Miranda*, 60 Mass. App. Ct. 905 (Ct. App. 2004) ................................................12

*Sawtelle v. Farrell*, 70 F.2d 1381 (1st Cir. 1995) ........................................................................14

*Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921 (D. Mass. 1995)........................................2

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994)..............................................16

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.*,
960 F.2d 1080 (1st Cir 1992).......................................................................................8, 13, 14, 17

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001)......................................15, 16

**<u>Statute</u>**

Mass. Gen. Laws Ann. ch. 223A, § 3 (2005)............................................................................9, 10

Defendant Lee S. Hillman respectfully submits this memorandum of law in support of his motion to dismiss the First Amended Complaint (the "FAC") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1]

## PRELIMINARY STATEMENT

This lawsuit relates to a purchase agreement dated March 15, 2002, pursuant to which Plaintiffs sold their interest in certain fitness centers to Bally Total Fitness Holding Corporation ("Bally") and Holiday Universal, Inc. ("Holiday"). Plaintiffs contend that under the agreement they were to be paid an "Earn Out Amount" two years after the closing of the transaction based on the performance of the business over time, but that Bally and certain of the defendants engaged in numerous nefarious activities designed to deny them their rightful compensation. Plaintiffs also allege that they were misled into believing that Bally's stock, which formed part of the consideration they received in the transaction, was worth $23 per share, the price at which it was publicly trading at the time.

Mr. Hillman, a citizen and resident of Illinois, served as President, Chief Executive Officer, and Chairman of Bally at the time the purchase agreement was signed in March 2002. He did not, however, negotiate the agreement. Nor did he sign it. Furthermore, he ended his affiliation with Bally and relinquished his positions at the company in December 2002, before any of the allegedly wrongful conduct with respect to the Earn Out Amount took place. Mr. Hillman's contact with Plaintiffs with regard to the events at issue in this lawsuit was limited to a single brief encounter with one of the plaintiffs. That conversation, which lasted no more than five minutes, was initiated by Plaintiff Scott G. Baker, not by Mr. Hillman. Moreover, it took place at Bally's offices in Illinois, not in Massachusetts.

The present complaint should be dismissed as against Mr. Hillman because this Court does not have personal jurisdiction over Mr. Hillman. First, the Massachusetts long-arm statute

---

[1] This submission addresses only jurisdictional issues and is the first part of Mr. Hillman's motion to dismiss the FAC; pursuant to the Joint Scheduling Order signed by this Court on August 16, 2005, Mr. Hillman's additional grounds for dismissal will be set forth in a later submission, if necessary.

does not reach Mr. Hillman, who neither transacted business giving rise to the present lawsuit in Massachusetts nor committed a tortious act in Massachusetts. Second, exercising jurisdiction over Mr. Hillman would not comport with federal due process standards because Mr. Hillman lacks the necessary "minimum contacts" with Massachusetts. For these reasons, as set forth more fully below, the Court should dismiss the complaint against Mr. Hillman.

## STATEMENT OF FACTS

The allegations of the FAC and jurisdictional facts relevant to this motion are described below.

### A.    The Parties

Plaintiffs Fit Tech, Inc., Planet Fitness Center, Inc., Planet Fitness Center of Maine, Inc., Planet Fitness Center of Dartmouth, Inc., Planet Fitness Center of Salem, Inc., Planet Fitness Center of Brighton, Inc., Stratford Fitness Center, Inc., David B. Laird, and Scott G. Baker are the former owners of a group of fitness centers, known collectively as "Planet Fitness," that they sold to defendants Bally and Holiday. (FAC ¶ 16.) Bally, which operates fitness centers in the United States and abroad, is a Delaware corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 10.) Holiday, an indirect wholly owned subsidiary of Bally at the relevant time, is a Delaware corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 11.)

Mr. Hillman is, and was at all times relevant to this action, a citizen and resident of Illinois. (Declaration of Lee S. Hillman submitted herewith (the "Hillman Decl.") ¶ 1.)[2] Until his resignation on December 11, 2002, Mr. Hillman served as President, Chief Executive Officer, and a Director of Bally. (Hillman Decl. ¶¶ 2-3; FAC ¶ 13.)

---

[2] On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may consider evidence presented in affidavits. *Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921, 923-24 (D. Mass. 1995) ("plaintiff cannot simply rely on unsupported allegations in her pleadings to establish personal jurisdiction," but rather "must set forth, through affidavits and other competent evidence, specific facts on each jurisdictional element").

2

Defendant Paul Toback took on the roles of President and Chief Executive Officer of Bally after Mr. Hillman's resignation on December 11, 2002. Prior to December 11, 2002, Mr. Toback had been Bally's Chief Operating Officer. Additionally, Mr. Toback has served as Bally's Chairman since May 21, 2003. (FAC ¶ 12).

Defendant John W. Dwyer served as Bally's Chief Financial Officer, Executive Vice President, and as a Director until his resignation on April 28, 2004. (*Id.* ¶ 14.)

## B. The Purchase Agreement

Plaintiffs sold their interest in Planet Fitness, as well as their rights and obligations to develop new fitness centers, to Bally and Holiday pursuant to an asset purchase agreement signed on March 15, 2002 (the "Purchase Agreement" or the "APA"), in a transaction that closed on April 19, 2002. (FAC ¶¶ 16-17, 19.) While Mr. Hillman was CEO and President of Bally at the time the Purchase Agreement was negotiated and signed, he had no role in negotiating, and he did not sign, the Purchase Agreement.

The Purchase Agreement provided that, in exchange for Planet Fitness, Plaintiffs were to receive (a) $3 million in cash, (b) 382,827 shares of Bally stock, valued at $23 per share for the purposes of the Purchase Agreement (totaling $11.7 million), and (c) up to $12 million approximately two years after the sale in the form of an "Earn Out Amount." (FAC ¶¶ 18-19.) The ultimate size of the Earn Out Amount was to be calculated based on the performance of the company over the two years following the closing, and the Purchase Agreement contemplated that Bally would provide various reports on its estimation of the expected Earn Out Amount. According to the FAC, Bally provided such a report in July 2003 (the "Interim Earn Out Calculation"), which indicated that Plaintiffs were not entitled to any payment. (*Id.* ¶ 45.) Plaintiffs also allege that in July of 2004, Bally provided a final earn out calculation (the "Final Earn Out Calculation" and, together with the Interim Earn Out Calculation, the "Earn Out Calculations"), which also showed that Plaintiffs were not entitled to any payment under the Earn Out Agreement. (*Id.* ¶ 56.)

3

**C.      Plaintiffs' Allegations And Claims**

On February 14, 2003, months after Mr. Hillman had left Bally, Plaintiffs filed an action

in this Court captioned *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, Civil Action No. 03-

10295-MEL, alleging that Bally and Holiday "engaged in a series of acts and omissions, and

other misconduct" in breach of the Purchase Agreement (the "Initial Lawsuit"). (FAC ¶ 20.)

Plaintiffs did not name Mr. Hillman as a defendant in the Initial Lawsuit, and Mr. Hillman has

never appeared or participated in any way in that lawsuit.

In the present action, Plaintiffs allege that, long after they filed the Initial Lawsuit (and

after Mr. Hillman no longer had any position at Bally), Bally and other defendants "in breach of

their obligations under the Agreement, and in retaliation for Plaintiffs' filing that lawsuit"

engaged in "a series of measures designed and intended to seize full control of the former Planet

Fitness clubs from Plaintiffs Laird and Baker, to drive them out of Bally, to frustrate the

Plaintiffs' attempts to use the available contractual mechanisms to contest Bally's wrongful

calculation of the Earn-Out Amount and, ultimately, to deprive the Plaintiffs of the fruits and

benefits of their contract with Bally and Holiday." (FAC ¶ 20.)  Specifically, Plaintiffs allege

that in retaliation for their filing of the Initial Lawsuit against Bally, Bally:

- notified Plaintiffs, within hours of receiving notice of the Initial Lawsuit, that it would be terminating certain transition services that Plaintiffs had used to help manage the fitness centers (*id.* ¶ 21);

- fired Plaintiffs' employees when Plaintiffs refused to waive their right to contend that these employees constituted "Corporate Overhead" which could not be factored into calculation of the Earn Out Amount (*id.* ¶ 22);

- refused to provide Plaintiffs Laird and Baker with furniture and computers for their offices, thereby humiliating them and undermining their authority (*id.* ¶ 23);

- transferred, in June 2003, key employees and hired employees without Plaintiffs' approval, in violation of the Purchase Agreement (*id.* ¶¶ 24-26);

- pursued a campaign to undermine Messrs. Laird's and Baker's authority by, *inter alia,* placing employees in the Planet Fitness clubs who told the club's other employees to ignore Messrs. Laird and Baker and that they had "been taken out of control" (*id.* ¶¶ 27-32);

- refused to pay contractors on a timely basis in a deliberate effort to delay the opening of a new club (*id.* ¶ 33);

4

- attempted, from the end of May through August of 2003, to create a pretext for excluding Messrs. Laird and Baker from the Planet Fitness clubs by, *inter alia*, creating a false written record and falsely accusing them and one of their key employees of embezzlement (*id.* ¶¶ 34-40); and

- ultimately, in August of 2003, ousted Messrs. Laird and Baker from management and barred them from the Planet Fitness clubs, in violation of the Purchase Agreement (*id.* ¶¶ 41-44).

Plaintiffs do not, and cannot, allege that Mr. Hillman had any involvement in these events. As Plaintiffs acknowledge, Mr. Hillman was no longer employed at Bally at the time Plaintiffs filed the Initial Lawsuit or thereafter, when these events allegedly took place. (*Id.* ¶ 13.) Not having been named as a defendant in the Initial Lawsuit, and having no continuing affiliation with Bally, Mr. Hillman of course did not participate in, and had no motive or opportunity to participate in, any alleged retaliation against Plaintiffs for the filing of the Initial Lawsuit. In fact, Mr. Hillman was not even aware of the Initial Lawsuit until after the filing of the present lawsuit in March 2005. (Hillman Decl. ¶ 11.)

While Bally was allegedly trying to drive Messrs. Laird and Baker out of Planet Fitness, it was also allegedly corrupting the process of calculating the Earn Out Amount in order to deprive Plaintiffs of what they claim they were owed. In this regard, Plaintiffs allege, *inter alia*, that Bally:

- submitted, in July 2003, the Interim Earn Out Calculation which was based on "numerous false and mis-calculations" and accounting and calculations that had been "jerry-rigged . . . to deprive Plaintiffs of any Interim payment under the APA" (FAC ¶ 45);

- sought to have the issues raised in the Initial Lawsuit resolved by PricewaterhouseCoopers under the accountant review section of the APA (*id.* ¶ 46);

- attempted to "obstruct the process" and "corrupt the entire procedure" by, *inter alia*, refusing to provide Plaintiffs with "numerous documents in its sole possession that were essential to Plaintiffs' review" of Bally's Interim Earn Out Calculation (*id.* ¶¶ 47-48);

- made "numerous false representations to the accountant that were directly material to the matters he had under consideration" and failed to disclose various alleged matters to PricewaterhouseCoopers (*id.* ¶¶ 49-52);

- secretly hired PricewaterhouseCoopers (while PricewaterhouseCoopers was reviewing the Interim Earn Out Calculation) in connection with a separate investigation to review "Bally's unfolding accounting scandal" and failed to

5

> disclose this fact and PricewaterhouseCoopers's conflict of interest to Plaintiffs (*id.* ¶ 53-55);

- issued, in July of 2004, the Final Earn Out Calculation in which Bally "intentionally, deliberately and fraudulently miscalculated the amounts genuinely owed to Plaintiffs" to suggest that Plaintiffs were entitled to nothing (*id.* ¶¶ 56-58); and

- refused to proceed with the accountant review procedure for the Final Earn Out Calculation in further violation of the Purchase Agreement (*id.* ¶ 59).

Mr. Hillman had no involvement whatsoever with these events either which took place even later after Mr. Hillman's affiliation with Bally ended.

Plaintiffs also claim that they were induced into agreeing to accept stock in lieu of cash under the Purchase Agreement because they relied on representations and warranties made by Bally and Holiday in the Purchase Agreement (FAC ¶ 64) and by non-party William Fanelli in an officer's certificate (*id.* ¶ 65) regarding Bally's SEC filings and financial statements, and on the "integrity of the public market" for the trading of Bally's securities as reflecting that the $23 per share was a fair and reasonable value for the Bally stock they were to receive in the transaction" (*id.* ¶ 81). Plaintiffs claim that Bally's financial results for 1999, 2000 and 2001, as reported in Bally's Forms 10-K (signed by Messrs. Hillman and Dwyer) and press releases issued on August 13, 1999, February 9, 2000, February 14, 2001 and February 13, 2002 (*id.* ¶¶ 66-77), were false and misleading because Bally's financial statements were not prepared in accordance with generally accepted accounting principles ("GAAP") and inflated Bally's revenues, income, and earnings (*id.* ¶ 90). With regard to Mr. Hillman, Plaintiffs allege that Plaintiff Baker "confronted" Mr. Hillman, who represented to Mr. Baker that "(i) Bally stock was a 'bargain' at $23 per share; (ii) that Bally's stock (which was trading then near $23 per share) had been trading at $36 per share and was going to return to that price; and (iii) that Bally's financial prospects going forward were excellent because Bally was growing, was "'cutting edge' and was the market leader." (*Id.* ¶ 62.)

While the FAC does not make clear which causes of action Plaintiffs seek to assert against Mr. Hillman, the FAC contains six causes of action asserted generically against the "Defendants." First, Plaintiffs assert a claim for breach of contract, alleging that, among other

6

things, Bally and Holiday breached the Purchase Agreement's covenant of good faith and fair dealing. (FAC ¶¶ 99-03.) Second, Plaintiffs bring a claim for common law deceit based on "numerous misrepresentations [made] with the purpose and intent of inducing Plaintiffs to sell their Planet Fitness clubs and other assets to Defendants Bally and Holiday in consideration for . . . a substantial quantity of Bally stock." (*Id.* ¶¶ 104-07.) Third, Plaintiffs bring a claim for equitable rescission. While Plaintiffs acknowledge that rescission of the transaction in its entirety is not practical, they seek a rescission of the stock issuance to Plaintiffs at the price of $23 per share and an award of the full amount of the potential Earn Out Amount under the Purchase Agreement. Plaintiffs also bring claims under the Massachusetts and Illinois deceptive trade practices acts. With regard to their claim under the Massachusetts statute, Plaintiffs allege that "Defendants were engaged in trade or commerce within the Commonwealth of Massachusetts" and that "Bally['s] fraudulent and wrongful campaign to freeze Laird and Baker out of management of Plaintiffs' Fitness Centers, occurred primarily and substantially within the Commonwealth." (*Id.* ¶¶ 112-17.) With regard to their claim under the Illinois statute, Plaintiffs allege that some of the defendants' conduct described in the complaint constitutes unfair and deceptive trade acts or practices while engaged in trade or commerce. (*Id.* ¶¶ 118-20). Last, Plaintiffs bring a claim against the defendants under the Massachusetts Uniform Securities Act, asserting that the acts and omissions alleged in the FAC were in violation of the section of that act that prohibits the sale of a security by means of an untrue statement of material fact. (*Id.* ¶¶ 121-23.)

## D.    **Mr. Hillman's Limited Contacts With Plaintiffs**

Mr. Hillman had no significant contacts with Massachusetts with respect to the Purchase Agreement or otherwise. Mr. Hillman is a citizen and resident of Illinois. (Hillman Decl. ¶ 1.) He does not reside, work, conduct a business, own or rent property, borrow or lend money, or transact personal business in Massachusetts. (*Id.* ¶¶ 14-19.) Nor has he ever done so. (*Id.*) He has traveled to Massachusetts on business in the course of his employment and for vacation on a number of occasions, but he never traveled to Massachusetts in connection with the Purchase

7

Agreement (or the calculation of the Earn Out Amount) at issue in this lawsuit. (*Id.* ¶ 20.) Mr. Hillman never communicated with Plaintiffs while in Massachusetts. (*Id.*)

Mr. Hillman's contact with Plaintiffs in connection with the Purchase Agreement is limited to a single alleged conversation which took place in Illinois. This encounter represents the only allegation in the complaint that could be construed as alleging any sort of contact with Plaintiffs or Massachusetts. (FAC ¶ 62.) On that occasion, Mr. Baker and Mr. Hillman met while Mr. Baker was visiting Illinois, and Mr. Baker allegedly "confronted" Mr. Hillman, in a conversation that lasted roughly five minutes. (FAC ¶ 62; Hillman Decl. ¶ 12.) Beyond that single interaction, Mr. Hillman had no other communications with Plaintiffs in connection with the Purchase Agreement (or the Earn Out Amount). Indeed, Mr. Hillman played no role in the negotiation of the Purchase Agreement. (Hillman Decl. ¶ 7.) Mr. Hillman did not sign the Purchase Agreement. (*Id.* ¶ 6.) He did not sign the officer's certificate given to Plaintiffs in connection with the transaction. (FAC ¶ 65.) He has never even been inside any of the Fit Tech facilities that are the subject of the Purchase Agreement. (Hillman Decl. ¶ 9.)

With regard to calculation of the Earn Out Amount, as noted above, Mr. Hillman left Bally in December 2002 – months before any such calculation was performed. (Hillman Decl. ¶ 4.) Mr. Hillman had no involvement in, or awareness of, the calculation of the Earn Out Amount or any of the many events about which Plaintiffs complain with respect to those calculations, all of which took place long after Mr. Hillman had ceased to be affiliated with Bally. (*Id.* ¶¶ 10-14.)

## ARGUMENT

On a motion to dismiss for lack of personal jurisdiction, Plaintiffs bear the burden of showing that the Court has the authority to exercise personal jurisdiction over Mr. Hillman. *Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). Plaintiffs must prove facts with respect to Mr. Hillman that satisfy the requirements of both Massachusetts's long-arm statute *and* the due process clause of the United States Constitution. *See Intech, Inc. v. Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 125, 826 N.E.2d 194, 197 (2005); *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1086, 1090 (1st Cir 1992); *LaVallee v. Parrot-*

8

*Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296, 298, 300, 302 (D. Mass. 2002). In so doing,

plaintiffs "must go beyond the pleadings and make affirmative proof" of personal jurisdiction.

*Chlebda v. H. E. Fortna & Bro. Inc.*, 609 F.2d 1022, 1024 (1st Cir. 1979).

Plaintiffs cannot make the showing required to establish personal jurisdiction over Mr.

Hillman. Mr. Hillman's limited contacts with Massachusetts generally and his extremely limited

contact with (one of the) Plaintiffs in connection with the Purchase Agreement, coupled with his

complete lack of contacts with Plaintiffs in connection with the calculation of the Earn Out

Amount, do not satisfy the Massachusetts long-arm statute or provide the "minimum contacts"

required under the U.S. Constitution to support the exercise of personal jurisdiction over him.[3]

## POINT I

### THE COURT HAS NO PERSONAL JURISDICTION OVER MR.
### HILLMAN UNDER THE MASSACHUSETTS LONG-ARM STATUTE

The exercise of personal jurisdiction over Mr. Hillman would be inappropriate because

the Massachusetts long-arm statute does not provide for such jurisdiction. In order for this Court

to exercise personal jurisdiction over Mr. Hillman, Plaintiffs have the burden of demonstrating

that Mr. Hillman's contacts with Massachusetts fall under one of the provisions of the long-arm

statute. The Massachusetts long-arm statute provides for jurisdiction over a person "who acts

directly or by agent, as to a cause of action in law or equity arising from the person's (a)

transacting any business in this commonwealth . . . [or] (c) causing tortious injury by an act or

omission in this commonwealth." Mass. Gen. Laws Ann. ch. 223A, § 3 (West 2000 & Supp.

2005). These are the only two even arguably relevant provisions of the statute. Neither

provision confers this Court with jurisdiction over Mr. Hillman under the facts of this case.

### A.    Mr. Hillman Did Not "Transact Business" In Massachusetts

For personal jurisdiction to arise under Section 3(a) of the Massachusetts long-arm

statute, the defendant must have "transact[ed] business" in Massachusetts, and the plaintiff's

---

[3] Mr. Hillman also joins and incorporates herein the arguments set forth in Mr. Dwyer's motion papers
which are applicable to Mr. Hillman as well.

9

cause of action must "arise[] from" the transaction of such business by the defendant. Mass.

Gen. Laws Ann. ch. 223A, § 3. The "transacting business" provision is "designed to identify

deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party"

with the "view to determining whether 'the possible need to invoke the benefits and protections

of the forum's laws was reasonably foreseeable.'" *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*,

132 F.3d 111, 113 (1st Cir. 1997) (citations omitted).

Here, while Plaintiffs can point to business transacted by Bally in the Commonwealth,

they cannot point to any business transacted by Mr. Hillman in the Commonwealth, much less

any such business out of which their claims can be said to have arisen.[4] Mr. Hillman did not

negotiate the Purchase Agreement. (Hillman Decl. ¶ 7.) Mr. Hillman did not sign the Purchase

Agreement or the officer's certificate provided to Plaintiffs. (Hillman Decl. ¶ 6; FAC ¶ 65.) Mr.

Hillman had no involvement at all with the calculation of the Earn Out Amount. (Hillman Decl.

¶ 10.) Additionally, Mr. Hillman never traveled to Massachusetts in connection with the

Purchase Agreement or the Earn Out Calculations, and Plaintiffs do not point to any phone calls,

letters, or emails from Mr. Hillman in connection with the Purchase Agreement or the Earn Out

Calculations. (*Id.* ¶ 20.)[5] Consequently, Plaintiffs cannot assert jurisdiction over Mr. Hillman

under the "transacting business" provision of the long-arm statute.

---

[4] The fact that this Court has jurisdiction over Bally and that, at one time, Mr. Hillman served as an officer and director of Bally, does not automatically confer this Court's with jurisdiction over Mr. Hillman. Massachusetts law makes clear that "'jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation.'" *LaVallee*, 193 F. Supp. 2d at 300 (citation omitted). When corporate officers are implicated in tortious conduct undertaken in furtherance of their corporate responsibilities, jurisdiction over the officers may not be based solely on jurisdiction over the corporation; rather there must be an independent basis of jurisdiction over the officers. *LaVallee*, 193 F. Supp. 2d at 300. Accordingly, the Massachusetts long-arm statute can only apply to Mr. Hillman if there is an independent basis for applying it. No such independent basis exists in this case.

[5] Mr. Hillman's signing of Bally's public SEC filings did not constitute "transacting business" in Massachusetts. In *Droukas v. Divers Training Acad., Inc.*, 375 Mass. 149, 151, 376 N.E.2d 548, 549-50 (1978), the plaintiff saw an advertisement offering two boat engines for sale that the defendant had placed in a magazine circulated in Massachusetts. Even though the plaintiff telephoned the defendant from Massachusetts, the defendants mailed letters to the plaintiff in Massachusetts relating to the sale, and the defendant shipped the engines to Massachusetts, the Supreme Judicial Court nonetheless held that the plaintiff could not hale the nonresident defendant into a Massachusetts court under § 3(a) to defend

10

**B.    Mr. Hillman Did Not Cause Tortious Injury
        By An Act Or Omission In Massachusetts**

Plaintiffs also cannot demonstrate that Section 3(c) of the long-arm statute, which

provides for jurisdiction over persons who engage in "tortious conduct within the

commonwealth," confers jurisdiction over Mr. Hillman in this Court. Here, Plaintiffs have not

pleaded, and cannot plead, facts in satisfaction of this section because the alleged statements

were made in Illinois and not "within the commonwealth" of Massachusetts.

Although an individual need not be physically present to be liable for tortious injury in

the state, to overcome a motion to dismiss for lack of personal jurisdiction, Plaintiffs must show

that the individual knowingly directed conduct into Massachusetts resulting in injury. *Murphy v.*

*Erwin-Wasey, Inc.*, 460 F.2d 661, 663-64 (1st Cir. 1972) (§ 3(c) is intended to apply only "when

the act causing the injury occurs within the Commonwealth," as "[t]o give it any broader

meaning would render Section 3(d) a nullity," and "the delivery in Massachusetts by mail or

telephone of a false statement originating outside the state, followed by reliance in

Massachusetts, is an 'act . . . within the Commonwealth'"); *LaForest v. Ameriquest Mtg. Co.,*

383 F. Supp. 2d 278, 284 (D. Mass. 2005) (where defendant-employee made misrepresentations

concerning settlement to Plaintiffs' counsel over the phone in Massachusetts, jurisdiction was

lacking under § 3(c) over employee who did not initiate the call and did not "derive[] any

personal benefit from his contacts with the commonwealth" or act "beyond the scope of his

employment").

---

against allegations that he had misrepresented the condition of the engines. *Id.* at 156-57, 376 N.E.2d at
552-53. The court refused to exercise jurisdiction over the defendant because his conduct had only a
"slight effect on the commerce of the Commonwealth" and was "void of any purposeful intent on the part
of the defendant to avail itself of the privilege of conducting activities within the forum State." *Id.* at 154,
376 N.E.2d at 551. Similarly, in a more recent application of § 3(a), the Supreme Judicial Court held that
*Droukas* applied to bar personal jurisdiction over a defendant who had advertised boats in a nationally
distributed magazine, sent communications into Massachusetts, and sold boats to a Massachusetts
purchaser. *Intech*, 444 Mass. at 126-27, 826 N.E.2d at 198. Despite these contacts, the defendant did not
transact business for purposes of § 3(a). *Id.* Like the advertisements in *Droukas* and *Intech*, Bally's
public SEC filings were not purposefully directed to the Commonwealth, but rather to the SEC and the
investing public at large. Accordingly, the requirements of § 3(a) cannot be satisfied.

Plaintiffs make no allegations that Mr. Hillman made any statements in Massachusetts or that he purposefully directed any statements into Massachusetts. Plaintiffs fail to allege that Mr. Hillman made any phone calls or sent any letters, faxes or other communications into the Commonwealth in connection with the Purchase Agreement or the Earn Out Calculations. *See Ealing Corp., v. Harrods Ltd.*, 790 F.2d 978, 981-82 (1st Cir 1986) (sending fraudulent misrepresentations via telex into the Commonwealth may satisfy section 3(c) of the long-arm statute to provide personal jurisdiction over corporation); *Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 164-65 (D. Mass. 2001) (section 3(c) does not apply where letter sent to Commonwealth was not basis of harm to plaintiff and was in response to any inquiry by plaintiff); *REMF Corp. v. Miranda*, 60 Mass. App. Ct. 905, 907, 801 N.E.2d 296, 299-300 (Ct. App. 2004) (refusing to apply section 3(c) where plaintiff did not adequately allege that harm arose from a communication into the Commonwealth).

As noted above, Plaintiffs allege a single encounter between Mr. Baker and Mr. Hillman.[6] This encounter, however, took place in Illinois, not in Massachusetts. (Hillman Decl. ¶ 12.) Moreover, according to the FAC, this encounter was initiated by Mr. Baker, not by Mr. Hillman, when Mr. Baker "confronted" Mr. Hillman. (FAC ¶ 62.) Consequently, Plaintiffs cannot meet their burden of showing that Mr. Hillman knowingly directed false statements into the Commonwealth and thus cannot assert jurisdiction under the "tortious conduct" provision.[7]

---

[6] As noted above (*see supra* at 1 n.1), Mr. Hillman will, if necessary, set forth in a separate submission at a later date the other grounds for dismissal, including, for example, that the statements Plaintiffs attribute to Mr. Hillman fail to state a cause of action on which relief may be granted. *See, e.g., Greenery Rehab. Group v. Antaramian*, 36 Mass. App. Ct. 73, 75, 628 N.E.2d 1291, 1293 (Ct. App. 1994) (statements "touting the superlative quality of an item" are mere "puffery" and not actionable). Also, Mr. Hillman denies making the statements attributed to him by Plaintiffs and will formally respond to these allegations at the appropriate time, if necessary.

[7] Nor can Mr. Hillman's signing of SEC filings satisfy the requirement that he knowingly directed conduct into, and thereby caused injury in, Massachusetts. As set forth above (*see supra* at 10 n.5), Bally's SEC filings, which predated the negotiations between Bally and Plaintiffs over the Purchase Agreement, were directed to the public at large. Plaintiffs do not, and cannot, allege that when he signed these filings Mr. Hillman even knew Plaintiffs, much less intended to direct his conduct toward them in Massachusetts.

12

## POINT II

### THE COURT HAS NO PERSONAL JURISDICTION OVER
### MR. HILLMAN UNDER THE UNITED STATES CONSTITUTION

The exercise of personal jurisdiction over Mr. Hillman is also precluded by the due

process clause in the United States Constitution. Constitutional due process requires that non-

resident defendants, like Mr. Hillman, have had "minimum contacts" with the forum state such

that the exercise of personal jurisdiction would not offend "'traditional notions of fair play and

substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation

omitted). Due process is satisfied with a finding of either general or specific jurisdiction.

*Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.

1998). Here, Plaintiffs cannot establish that this Court has either general or specific jurisdiction

over Mr. Hillman. Mr. Hillman had no contacts with Massachusetts with regard to the Purchase

Agreement or the Earn Out Calculations, and his other contacts with Massachusetts and with

Plaintiffs were so limited that the exercise of personal jurisdiction over him would not comport

with due process standards. *United Elec.*, 960 F.2d at 1086. Plaintiffs' inability to establish that

Mr. Hillman had the minimum contacts with Massachusetts necessary to comport with due

process requires dismissal. *Massachusetts Sch. of Law*, 142 F.3d at 35.

### A.    Mr. Hillman Is Not Subject To General Jurisdiction In Massachusetts

Plaintiffs' burden in establishing general jurisdiction is high. *Helicopteros Nacionales de

Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). General jurisdiction may lie only if the

defendant's contacts with the forum state, including any contacts unrelated to the cause of action,

are "continuous and systematic general business contacts" that approximate "physical presence"

in the forum state. *Id.*; *Massachusetts Sch. of Law*, 142 F.3d at 34; *Noonan v. Winston Co.*, 902

F. Supp. 298, 302-03  (D. Mass. 1995) *aff'd* 135 F.3d 85 (1st Cir. 1998).

Plaintiffs do not come close to meeting this standard. The FAC contains no allegations

that could support a finding of general jurisdiction. Mr. Hillman has never resided in or owned

real estate in Massachusetts. (Hillman Decl. ¶¶ 14-15.) He has never conducted business as an

individual in Massachusetts. (*Id.* ¶ 18.) Mr. Hillman's visits to Massachusetts, which were

13

unrelated to the transaction at issue in this case, were not continuous or systematic and did not approximate physical presence in the state. (Hillman Decl. ¶ 20.) Accordingly, there is no basis for exercising general jurisdiction over Mr. Hillman.

## B.    Plaintiffs Cannot Establish Specific Jurisdiction Over Mr. Hillman

Nor can plaintiffs establish that Mr. Hillman's contacts with Plaintiffs in connection with the allegations of the FAC are sufficiently substantial that Mr. Hillman could have reasonably anticipated being haled into court in Massachusetts. Accordingly, there is no basis for a finding of specific jurisdiction. To determine whether sufficient "minimum contacts" exist to establish specific jurisdiction, the First Circuit applies a three part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum states, thereby invoking the benefits and projections of that state's laws and making the defendants involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*United Elec.*, 960 F.2d at 1089. The First Circuit "steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." *Id.* The failure to meet any single prong of the analysis, mandates dismissal. Here, the connection between the claims asserted in the FAC and Mr. Hillman's contacts with Massachusetts is so attenuated that Plaintiffs cannot meet any of the three requirements.

### 1.    This Lawsuit Does Not "Arise Out Of, Or Relate To," Mr. Hillman's Activities In Massachusetts

In analyzing relatedness, courts in the First Circuit consider the "nexus between the claim and the defendant's in-forum activities." *LaVallee*, 193 F. Supp. 2d at 302; *see also Sawtelle v. Farrell*, 70 F.2d 1381, 1389 (1st Cir. 1995)). The relatedness requirement is met only if "the action . . . directly arises out of the specific contacts between the defendant and the forum state." *LaVallee*, 193 F. Supp. 2d at 302 (*quoting Sawtelle*, 70 F.2d at 1389). Connections that are "*attenuated and indirect*" are not sufficient. *Interface Group.-Mass., LLC, v. Rosen*, 256 F.

14

Supp. 2d 103, 108 (D. Mass. 2003) (emphasis in original). Plaintiffs fail to make any allegations with regard to Mr. Hillman that satisfy this first requirement.

All of the claims asserted in the FAC relate to the Purchase Agreement and the calculation of the Earn Out Amount. Plaintiffs allege that Bally breached the Purchase Agreement by engaging in a course of conduct calculated to drive Plaintiffs Laird and Baker out of Planet Fitness and to avoid paying Plaintiffs what they were owed through numerous misdeeds in connection with calculating the Earn Out Amount. (FAC ¶¶ 20-59.) Mr. Hillman is not alleged to have been involved with any of these events; indeed, he had left the company long before Bally and the other defendants are alleged to have engaged in such conduct. (*Id.* ¶ 13.) Moreover, to the extent that the FAC contains allegations relating to the negotiation and signing of the Purchase Agreement, Mr. Hillman was not involved with this either. (Hillman Decl. ¶¶ 6-7.) He was not himself a party to the Purchase Agreement, he did not sell Bally stock to Plaintiffs, and he did not purchase Planet Fitness from Plaintiffs. Mr. Hillman played no role in negotiating the Purchase Agreement. (*Id.* ¶ 7.) Additionally, he did not sign the Purchase Agreement or the officer's certificate provided to Plaintiffs. (Hillman Decl. ¶ 6; FAC ¶ 65.) Plaintiffs do not allege any communication, whether by telephone, facsimile or letter, from Mr. Hillman to Plaintiffs in Massachusetts regarding the Purchase Agreement or the Earn Out Calculations. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 622 (1st Cir. 2001) (in discussing the "related to" requirement, stating that "[w]hen physical presence is lacking, we look for some other indication that the defendant reached into the forum, such as mail or telephone contacts" related to the claim and finding such contacts lacking). Plaintiffs allude to a single contact with Mr. Hillman – a five minute conversation which was initiated by Mr. Baker, not by Mr. Hillman, and which took place in Illinois, not in Massachusetts. (FAC ¶ 62; Hillman Decl. ¶ 12.) Plaintiffs' claims cannot be said to arise out of, or relate to, Mr. Hillman's activities in Massachusetts, therefore, because Mr. Hillman engaged in no activities whatsoever with

15

regard to the Purchase Agreement or the Earn Out Calculations in Massachusetts, and the claims against him should be dismissed.[8]

### 2. Mr. Hillman's In-State Contacts Do Not Represent A "Purposeful Availment" Of The Privilege Of Doing Business In Massachusetts

The "purposeful availment" requirement ensures that a defendant will "not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted). This prong is satisfied "only . . . when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Swiss Am. Bank*, 274 F.3d at 624; *see also Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207-08 (1st Cir. 1994) (the "two cornerstones of purposeful availment" are "foreseeability" and "voluntariness"). Plaintiffs fail to allege – because they cannot – that Mr. Hillman conducted *any* activities directed toward Massachusetts, much less any activities that could be labeled "purposeful and voluntary." Mr. Hillman was not a party to the Purchase Agreement, and he did not purposefully avail himself of any benefit, privilege, or protection from Massachusetts law. *See, e.g., LaVallee*, 193 F. Supp. 2d at 304. Accordingly, Plaintiffs cannot make the required showing with respect to Mr. Hillman.

Plaintiffs may argue that the "effects test" should apply because they base their claim on conduct that occurred out of state, *see Calder v. Jones*, 465 U.S. 783, 788-89 (1984), but invocation of the effects test is inappropriate here. As an initial matter, it is not clear that the First Circuit interprets *Calder*'s "effects test" as applicable to any tort beyond defamation. *Swiss Am. Bank*, 274 F.3d at 624 ("'effects' test was specifically designed for use in a defamation case" and "whether *Calder* was ever intended to apply to numerous other torts . . . is unclear").

---

[8] Moreover, Plaintiffs cannot rely on the so-called "effects test," discussed more fully *infra* at 17-18, to satisfy the relatedness prong. *Swiss Am. Bank*, 274 F.3d at 623-24 (pointing out that the "effects test" is only relevant to the "purposeful availment" prong and, as such, "cannot be used to strengthen" the plaintiff's showing of relatedness).

Furthermore, the conduct Plaintiffs attribute to Mr. Hillman would not satisfy the effects test. Under the test, where the defendant committed an intentional act, expressly aimed at the forum state and causing harm that the defendant knows is likely to be suffered in the forum state, a foreign act may in some circumstances satisfy the purposeful availment prong. *Calder*, 465 U.S. at 788. The most critical aspect of the test is that the alleged wrongful, intentional conduct be expressly aimed at the forum state and that the forum state be the "focal point" of the tortious conduct. *Id.* at 788-90. Here, this is not the case. As discussed above, the one conversation Mr. Hillman had with (one of the) Plaintiffs took place in Massachusetts and was initiated by Mr. Baker, not by Mr. Hillman, and cannot be viewed as an act intentionally directed by Mr. Hillman at Massachusetts. Nor can Mr. Hillman's signing of Bally's public SEC filings, and related press releases, be viewed as an intentional act directed to cause harm in Massachusetts because these filings predated the negotiation of the Purchase Agreement and were directed to the public at large. *See supra* at 10 n.5 & 12 n.7. Bally's financial statements were filed publicly with the SEC for the benefit of the entire investing public, and the press releases reporting the financial statements were issued to the world at large.[9] They were not "expressly aimed" at Plaintiffs.

### 3.    Exercise Of Jurisdiction Over Mr. Hillman Would Be Unreasonable Under The "Gestalt Factors"

Finally, this Court may exercise jurisdiction only if it would be reasonable to do so – the exercise of jurisdiction must comport with fair play and substantial justice. *Burger King*, 471 U.S. at 476-77. The First Circuit has identified five "Gestalt" factors that it considers when determining whether the exercise of jurisdiction is reasonable:  (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiffs' interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *United Elec.*, 960 F.2d at 1089.

---

[9] The end result of allowing jurisdiction to be premised on SEC filings and press releases would be to require officers of public companies to submit to jurisdiction anywhere in the country.

17

Under these factors, exercising jurisdiction over Mr. Hillman would be unreasonable. The burden on Mr. Hillman, an Illinois resident, in defending an action in Massachusetts would be significant. *See LaForest*, 383 F. Supp. 2d at 287 (finding it unfair to require a California resident travel to Massachusetts to defend an action, particularly since he acted solely on behalf of his employer). Also, it is not clear that Massachusetts has a greater interest in this action than Illinois. Indeed, Plaintiffs purport to assert claims under both Massachusetts and Illinois law. While the alleged harm to Plaintiffs occurred in Massachusetts, the fact issues relevant to Mr. Hillman will likely surround events in Illinois. Many of the documents and witnesses relating to the allegations relevant to Mr. Hillman are located in Illinois, an alternative forum where there are currently cases pending against Bally, Mr. Hillman, and the other defendants. Thus, Massachusetts would not be the most efficient forum in which to adjudicate this matter against Mr. Hillman.

## CONCLUSION

For the foregoing reasons, Mr. Hillman respectfully requests that the Court dismiss the complaint against him.

Dated: November 30, 2005

By: _____

CADWALADER, WICKERSHAM & TAFT LLP
Gregory A. Markel (admitted pro hac vice)
Gregory G. Ballard (admitted pro hac vice)
Kathryn F. Shreeves (admitted pro hac vice)
One World Financial Center
New York, New York 10281
(212) 504-6000

GELB & GELB LLP
Richard M. Gelb (BBO #188240)
Robert S. Messinger (BBO #651396)
20 Custom House Street
Boston, Massachusetts 02110
617-345-0010

Attorneys for Defendant Lee S. Hillman

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Lee. S. Hillman's Memorandum of Law in Support of His Motion to Dismiss for Lack of Personal Jurisdiction was served by mail on November 30, 2005 upon the attorney of record for each party having appeared in this case.

Robert S. Messinger