IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FIT TECH, INC., PLANET FITNESS CENTER, INC., PLANET FITNESS CENTER OF MAINE, INC., PLANET FITNESS CENTER OF DARTMOUTH, INC., PLANET FITNESS CENTER OF SALEM, INC., PLANET FITNESS CENTER OF BRIGHTON, INC., STRATFORD FITNESS CENTER, INC., DAVID B. LAIRD, and SCOTT G. BAKER.<br><br>Plaintiffs.<br><br>vs.<br><br>BALLY TOTAL FITNESS HOLDING CORPORATION, HOLIDAY UNIVERSAL, INC., PAUL TOBACK, LEE HILLMAN, and JOHN DWYER.<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. 05-10471-MEL<br><br>Judge Morris E. Lasker |

**DEFENDANT JOHN DWYER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant John W. Dwyer ("Dwyer") respectfully submits this memorandum of law in support of his motion to dismiss him from Plaintiffs' First Amended Complaint (the "Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(2) on grounds that personal jurisdiction over him is lacking under both Massachusetts state law and federal due process.

**INTRODUCTION**

This case involves the asset purchase agreement that Plaintiffs David Laird and Scott Baker signed with Defendant Bally Total Fitness Holding Corporation ("Bally") and Holiday Universal, Inc. ("Holiday") on March 15, 2002. Under that agreement,

Plaintiffs agreed to sell their interests in various fitness clubs, which are named as corporate Plaintiffs in this action, to Holiday in exchange for cash and shares of Bally stock.

This Court should dismiss the Complaint against Mr. Dwyer because personal jurisdiction over him is absent. *First,* the Massachusetts long-arm statute does not permit the exercise of personal jurisdiction over Mr. Dwyer because he did not "transact business" in Massachusetts that gave rise to this litigation, nor did he cause a tortious injury through "an act or omission in" the Commonwealth. *Second,* exercising personal jurisdiction over him would not comport with federal due process because Mr. Dwyer lacks sufficient minimum contacts with Massachusetts.

## JURISDICTIONAL FACTS[1]

### I.   The Parties

Plaintiffs Laird and Baker are residents of Massachusetts. (Compl. ¶¶ 8-9.) The corporate Plaintiffs are incorporated in Massachusetts, and each has its principal place of business in Massachusetts. (Compl. ¶¶ 1-9.) Individual Defendant John Dwyer is, and was at all times relevant to this action, both a citizen and resident of Illinois. (Declaration of John Dwyer concurrently filed with this Court, hereafter "Dwyer Decl.," ¶ 2.) Mr. Dwyer is a former officer and director of Bally. (Dwyer Decl. ¶ 1.)

---

[1] For the purposes of this motion only, Mr. Dwyer assumes the truth of the facts alleged in the Complaint— but only to the extent that they do not conflict with his Declaration. To the extent that conflicts do exist, however, Plaintiffs cannot rest on the allegations in their Complaint to survive a motion to dismiss; instead, "they must go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Bro., Inc.,* 609 F.2d 1022, 1024 (1st Cir. 1979) (holding that mere allegations in complaint are insufficient to establish personal jurisdiction when they are contradicted by an affidavit from the defendant).

## II. The Asset Purchase Agreement

On March 15, 2002, individual Plaintiffs Laird and Baker (collectively, "Plaintiffs") entered into an asset purchase agreement with Bally and Holiday. (Compl. ¶ 17.) Under the agreement, Plaintiffs were to receive $3,000,000 cash, with the potential to earn an additional $12,000,000 two years later (the "Earn Out"), and up to $11,700,000 worth of Bally stock (the exact amount to be determined at the closing), which the parties agreed would be valued at $23 per share. (Compl. ¶ 18.) In the agreement, Bally and Holiday made several representations and warranties, including both that Holiday had made Bally's December 31, 2000 to December 31, 2001 SEC filings available to Plaintiffs and that those filings did not contain any untrue statement of material fact or fail to disclose any material fact required to make any statement not misleading. (Compl. ¶ 64.)

Mr. Dwyer did not negotiate the agreement (Dwyer Decl. ¶ 8), he is not a party to it (Dwyer Decl. ¶ 6), and he did not sign it on behalf of either Bally or Holiday (Compl. at ¶ 64). Nor did Mr. Dwyer sign the officer's certificate that Bally and Holiday tendered at the April 19, 2002 closing, which affirmed that all the representations and warranties in the asset purchase agreement remained, in all material respects, true and correct. (Compl. ¶ 65.)

## III. Plaintiffs' Claims

Plaintiffs allege that Bally and Holiday breached the representations and warranties in the asset purchase agreement: (1) because Bally's SEC filings and its press releases discussing financial results supposedly contained material omissions and untrue statements; and (2) because Bally's financial statements supposedly were not prepared in

accordance with generally accepted accounting principles. (Compl. ¶ 90.) Plaintiffs also allege that Bally and Holiday retaliated against them for filing the original complaint in this case captioned *Fit Tech, Inc. et al. v. Bally Total Fitness Holding Corp.*, Civil Action No. 03-10295-MEL. (Compl. ¶ 20). Finally, Plaintiffs allege that they have not received the Earn Out amount provided for in the asset purchase agreement. (Compl. ¶ 57.)

Based on these allegations, Plaintiffs assert five causes of action against all the Defendants in this case. (Compl. A-G.) Count I alleges that Bally and Holiday breached the asset purchase agreement's covenant of good faith and fair dealing. (Compl. ¶¶ 99-103.) Count II alleges deceit, based in part on the Defendants' alleged misrepresentations made with the purpose and intent of inducing the Plaintiffs to accept partial payment in the form of Bally stock. (Compl. ¶ 105.) However, as alleged in the Complaint, the only representations—or for that matter, any other actions—specifically attributed to Mr. Dwyer are those representations he made to the SEC when he signed, in his capacity as a corporate officer, Bally's annual and quarterly SEC filings. (Compl. ¶¶ 68, 69, 71, 74, 77.) Count III seeks equitable recession of the purchase agreement—an agreement to which Mr. Dwyer was not a party. (Compl. ¶ 111; Dwyer Decl. ¶ 6.) Count IV alleges violations of Massachusetts state law prohibiting unfair and deceptive trade practices based on the allegation that Bally's retaliation against Plaintiffs included a "campaign to freeze Laird and Baker out of management" of their former fitness centers. (Compl. ¶¶ 114.) Count V alleges violations of Illinois' version of the same law. Finally, Count VI alleges a violation of Section 410(a)(2) of the Massachusetts Uniform Securities Act prohibiting material false statements or omissions in connection with the sale of securities.

### IV. Mr. Dwyer's Limited Contacts with Massachusetts

Mr. Dwyer is a citizen and resident of Illinois; he has never resided in Massachusetts. (Dwyer Decl. ¶¶ 2-3.) He does not work, conduct business, own or rent property, or borrow or lend money in Massachusetts. (Dwyer Decl. ¶ 4.) While he has traveled to Massachusetts before, he has only done so between ten to fifteen times in his lifetime—and none of that travel was related to Bally's negotiation or purchase of Plaintiffs' fitness centers or to any other conduct alleged in the Complaint. (Dwyer Decl. ¶¶ 5, 9.) Finally, Mr. Dwyer has never communicated with Plaintiffs while they were in Massachusetts. (Dwyer Decl. ¶ 10.)

## ARGUMENT

Plaintiffs bear the burden of proving that this Court may exercise personal jurisdiction over Mr. Dwyer. *E.g. Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). They must prove—as to Mr. Dwyer—that (1) the "literal requirements of the [long-arm] statute are satisfied," *Intech, Inc. v. Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 125, (2005) (internal quotation omitted) (finding that long-arm statute did not authorize personal jurisdiction), and (2) that he has sufficient minimum contacts with Massachusetts consistent with federal due process. *E.g. LaVallee v. Parrot-Ice Drink Prods of Am., Inc.*, 193 F. Supp. 2d 296, 300 (D. Mass. 2002) (finding that neither the long-arm statute nor due process allowed the court to exercise jurisdiction over corporate employee). Plaintiffs fail to satisfy either requirement, and the Complaint against Mr. Dwyer therefore should be dismissed.

I. **Massachusetts' Long-Arm Statute Does Not Authorize Personal Jurisdiction Over Mr. Dwyer.**

The Massachusetts long-arm statute lists eight potential bases for long-arm jurisdiction, but only two even arguably could be raised here. Section 3(a) authorizes jurisdiction "as to a cause of action in law or equity arising from the person's... transacting any business in this commonwealth," and § 3(c) authorizes jurisdiction "as to a cause of action in law or equity arising from the person's... causing tortious injury by act or omission in this commonwealth." Mass. Gen. Laws Ann. ch. 223A § 3(c) (West 2005). Because none of the jurisdictional facts involving Mr. Dwyer satisfies either of these sections, this Court should grant Mr. Dwyer's motion to dismiss for lack of personal jurisdiction.

> A. Mr. Dwyer Has Not Transacted Any Business in Massachusetts That Would Authorize Jurisdiction Under § 3(a).

To invoke § 3(a) of the Massachusetts long-arm statute, Plaintiffs must prove both that Mr. Dwyer transacted business in Massachusetts and that their claims arise from that business transaction. *Megna v. Marriott Hotel*, No. CA 9403757, 1995 WL 808632 (Mass. Super. April 6, 1995) (holding that § 3(a) does not authorize jurisdiction over individuals who have no contacts with Massachusetts). An isolated transaction with only a slight effect on state commerce does not constitute transacting business. *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 154 (1978); *accord Intech*, 444 Mass. at 126. At a minimum, transacting business in Massachusetts requires sending communications to Massachusetts. *See Landmark Bank v. Machera*, 736 F. Supp. 375, 384 (D. Mass. 1990) (holding that § 3(a) was not satisfied in a suit alleging violations of Massachusetts securities laws where no misrepresentations occurred in Massachusetts); *Bearse v. Main St. Invs.*, 170 F. Supp. 2d 107, 112-13 (D. Mass. 2001) (holding § 3(a) not

satisfied in a suit involving fraudulent misrepresentations of mortgage bonds where no misrepresentations occurred in Massachusetts); *Nat'l Med. Care, Inc. v. Home Med. of Am.*, 14 Mass. L. Rptr. 541, 2002 WL 1290395 at *5 (Mass. Super. April 23, 2002) (holding that §3(a) required sending communications in Massachusetts). But even sending communications into the state will not necessarily suffice to satisfy § 3(a). *See Droukas*, 375 Mass. at 153. Moreover, merely proving that this Court can exercise personal jurisdiction over Mr. Dwyer's employer is insufficient to prove that this Court can exercise personal jurisdiction over him: "[J]urisdiction over a corporation does not automatically confer jurisdiction over its officers." *Nat'l Med. Care*, 2002 WL 1290395 at *3; *accord Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F. Supp. 1106 (D. Mass. 1983) (finding personal jurisdiction as to corporation but not as to individual employee).

In *Droukas*, the plaintiff saw an advertisement offering two boat engines for sale that the defendant had placed in a magazine circulated in Massachusetts. *Droukas*, 375 Mass. at 151. Even though the plaintiff telephoned the defendant from Massachusetts, the defendant mailed letters to the plaintiff in Massachusetts relating to the sale, and the defendant shipped the engines to Massachusetts, the Supreme Judicial Court nonetheless held that the plaintiff could not hale the nonresident defendant into a Massachusetts court under § 3(a) to defend against allegations that he had misrepresented the condition of the engines. *Id.* at 157. The court refused to exercise jurisdiction over the defendant because his conduct had only a "slight effect on the commerce of the Commonwealth" and was "void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State." *Id.* at 154 (footnote omitted).

In a similar, yet more recent, application of § 3(a), the Supreme Judicial Court held that *Droukas* applied to bar personal jurisdiction over a defendant who had advertised boats in a nationally distributed magazine and had sent both communications and, in one instance, a boat into Massachusetts. *Intech*, 444 Mass. at 127. But despite these contacts with the Commonwealth, the defendant did not transact business for the purposes of § 3(a). *Id.*

Like the defendants in *Landmark Bank* and *Bearse*, Mr. Dwyer has had no communications with Plaintiffs in Massachusetts. He did not meet with them in Massachusetts, nor did he send any communications into the Commonwealth, including telephone calls, facsimiles, post mail, or e-mail. (Dwyer Decl. ¶ 10.) Plaintiffs' only allegation to support their claims against Mr. Dwyer is that he supposedly made misrepresentations when he signed certain of Bally's SEC filings. Critically, however, those SEC filings simply do not constitute "transacting business" in Massachusetts because—like the advertisements in *Droukas* and *Intech*—the filings were not purposefully directed to the Commonwealth; rather they were directed to the SEC and the investing public at large. Accordingly, when Mr. Dwyer signed the SEC filings, he did not engage in a "purposeful and successful solicitation of business from residents of the Commonwealth," *Tatro v. Manor Care, Inc.*, 416 Mass. at 763, 767 (1994); therefore § 3(a) cannot be satisfied.

> B. Mr. Dwyer Neither Did nor Failed to Do an Act in Massachusetts that Caused a Tortious Injury.

To invoke § 3(c) of the long-arm statute, the plaintiff must show not only that a tortious injury occurred in Massachusetts, but also that the defendant "caus[ed] tortious injury *by an act or omission in this commonwealth.*" Mass. Ann. Laws ch. 223A, § 3(c)

(West 2005) (emphasis added); *see also, e.g., Litchfield Fin. Corp. v. Buyers Source Real Estate Group*, 389 F. Supp. 2d 80, 88 (D. Mass. 2005) (holding that § 3(c) does not reach negligent misrepresentations sent into Massachusetts). In this case, no conduct by Mr. Dwyer resulted in any act or omission whereby Plaintiffs were injured; therefore § 3(c) cannot be used as the basis for exercising personal jurisdiction.

As demonstrated above, Plaintiffs' allegations regarding Mr. Dwyer's representations in connection with signing certain of Bally's SEC filings from 1999 through March 27, 2002 do not show that Mr. Dwyer directed any communications into Massachusetts. Further, Plaintiffs' allegation that Mr. Dwyer made these representations "with the purpose and intent of inducing the Plaintiffs to sell their Planet Fitness clubs and other assets" fails as a matter of logic. (Compl. ¶ 105.) Plaintiffs concede that negotiations did not begin until early 2002, and ended on March 15, 2002 upon execution of the asset purchase agreement. (Compl. ¶¶ 16, 64.) It is self-evident that the timing makes it impossible for Mr. Dwyer to have intended to induce these Plaintiffs in Massachusetts to do anything; Plaintiffs have not alleged that Mr. Dwyer even knew Plaintiffs existed when he signed the 1999, 2000, and 2001 SEC filings, and they concede that by the time Mr. Dwyer submitted the March 27, 2002 filing, Bally had already executed the asset purchase agreement with them.

The SEC filings were not composed in, filed from, or sent to Massachusetts. (Dwyer Decl. ¶ 11.) Moreover, given the timing of the transaction, Mr. Dwyer could not have intended his statements to have an effect in Massachusetts. Plaintiffs have not suffered a tort from Mr. Dwyer's acts or omissions in Massachusetts; therefore, § 3(c) cannot serve as the basis for personal jurisdiction over him.

## II. Due Process Does Not Permit Personal Jurisdiction over Mr. Dwyer.

To demonstrate that this Court may exercise personal jurisdiction over Mr. Dwyer, Plaintiffs must plead and establish facts to satisfy both the Massachusetts long-arm statute and due process. *E.g. Am. Freedom Train Found. v. Spurney*, 747 F.2d 1069, 1074-75 (1st Cir. 1984) (holding that personal jurisdiction did not exist over a corporate director under either the long-arm statute or due process). Even where state law provides a basis for the exercise of jurisdiction, Plaintiffs must still make a "more extensive showing" before due process will allow a court to exercise jurisdiction. *Barett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). As demonstrated above, the Massachusetts long-arm statute does *not* provide for jurisdiction over Mr. Dwyer in this case. Additionally, Plaintiffs' attempt to hale Mr. Dwyer into Massachusetts fails for the separate and independent reason that Mr. Dwyer's insubstantial contacts with the state do not satisfy due process.

Due process requires that nonresident defendants such as Mr. Dwyer have had minimum contacts with the forum state such that the exercise of personal jurisdiction will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation and quotation omitted). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. 310). Because Mr. Dwyer neither has the extensive contacts with Massachusetts that would authorize general jurisdiction nor has sufficient contacts

with Massachusetts relating to this suit that would authorize specific jurisdiction, the Due Process Clause prevents Plaintiffs from subjecting him to suit in Massachusetts.

A. General Jurisdiction

Plaintiffs' burden in establishing general jurisdiction is high. *Helicoptros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). General jurisdiction may be found only if the defendant's contacts with the forum, including any contacts unrelated to the cause of action, are "continuous and systematic general business contacts" that approximate physical presence in the state. *Id.* This test requires Plaintiffs to prove that Mr. Dwyer's contacts with Massachusetts are "extensive and pervasive." *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d at 298, 320 (D. Mass. 2004) (internal quotation omitted).

Plaintiffs do not and cannot come close to meeting this test. Mr. Dwyer has never resided in or owned real estate in Massachusetts. (Dwyer Decl. ¶¶ 3-4.) He has never personally conducted business in Massachusetts or with Massachusetts residents. (Dwyer Decl. ¶ 4.) Nor has he traveled to the Commonwealth on a consistent basis: Mr. Dwyer has traveled to Massachusetts only on ten to fifteen occasions in his lifetime, and all were in his thirteen year tenure at Bally. (Dwyer Decl. ¶ 5.) In short, Mr. Dwyer has had only "limited and intermittent" contacts with Massachusetts. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 621 (1st. Cir 2001). *See also Danton v. Innovative Gaming Corp. of Am.*, 246 F. Supp. 2d 64, 70 (D. Me. 2003) (holding that general jurisdiction over corporation was inapplicable even though plaintiffs alleged that CEO "traveled to Maine in person on many occasions for many days in 1999 and 2000"). This is not sufficient to satisfy the high burden required for invoking general jurisdiction.

B. <u>Specific Jurisdiction</u>

Nor can Plaintiffs establish that Massachusetts courts can exercise specific jurisdiction over Mr. Dwyer. Before a plaintiff can invoke specific jurisdiction, the plaintiff must present evidence to satisfy three prerequisites: (1) relatedness; (2) purposeful availment; and (3) reasonableness. *LaVallee v. Parrot-Ice Drink Prods. of Am.*, 193 F. Supp. 2d 296, 303 (D. Mass. 2002). None of these requirements are present here.

1. <u>Mr. Dwyer Has No Massachusetts Contacts That Relate to the Suit.</u>

The relatedness prong of the due process inquiry asks whether the defendant's contacts with the state form the proximate cause of the plaintiff's claim. *See Nowak v. Tak How Invs. Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996).[2] Thus, if a plaintiff cannot prove that the claim underlying the litigation "*directly* arise[s] out of, or relate[s] to, the defendant's *forum-state activities*," *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) (emphasis added), then the complaint must be dismissed, *Phillips Exeter Academy* 196 F. 3d at 288. *See also LaVallee*, 193 F. Supp. 2d 296 (dismissing a complaint alleging that the defendant had made fraudulent misrepresentations in Massachusetts in order to unjustly enrich itself in Saudi Arabia).

Determining proximate causation requires separating the defendant's "ancillary" in-forum contacts from those going to the "gravamen" of the complaint. *LaVallee*, 193 F.

---

[2] The First Circuit requires "contract and tort claims [to be analyzed] discreetly." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999). Relatedness analysis for contract actions asks "whether the defendant's forum-based activities are instrumental in the formation of the contract." *Mass. School of Law at Andover v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998) (internal quotation omitted). With respect to Mr. Dwyer, Plaintiffs cannot assert any contract claims against him; Mr. Dwyer was not a party to the asset purchase agreement. *See Porshin v. Snider*, 349 Mass. 653, 655 (1965) ("Unless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract.").

Supp. 2d at 303. Relatedness does *not* consider a plaintiff's allegations of in-forum effects of out-of-forum activity. *See Swiss Am. Bank*, 274 F.3d at 623 ("[T]he 'effects' test is a gauge for purposeful availment and is to be applied *only after* the relatedness prong has already been satisfied.") (emphasis added).

*Sawetelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995), is instructive. In that case, New Hampshire residents filed a malpractice suit in New Hampshire against a Virginia attorney and his local counsel retained to prosecute a wrongful death action in Florida. Specifically, the plaintiffs claimed that the attorneys committed malpractice when they advised the plaintiff to accept a settlement offer. *Id.* at 1386. Although the defendants had communicated with the plaintiffs by telephone and mail—including a letter advising the plaintiffs to accept the settlement offer—the court held that these in-forum contacts failed the relatedness prong. *Id.* at 1390. Because the attorneys' potential negligence turned on the sufficiency of their investigation in Florida, which the contacts with New Hampshire did not implicate, the First Circuit noted, "It would… be illogical to conclude that those isolated recommendations constituted the negligent conduct that caused the Florida injury and thus were in-forum acts sufficient to establish specific personal jurisdiction in New Hampshire." *Id.*

The grounds to dismiss Mr. Dwyer are even more compelling here. Unlike the defendants in *Sawetelle* who communicated with their clients in Massachusetts, Mr. Dwyer has had no contacts at all with Plaintiffs in Massachusetts—"ancillary" or otherwise. (Dwyer Decl. ¶¶ 7-10.) There is, accordingly, an even stronger basis for finding that the relatedness requirement cannot be met here.

### 2. Mr. Dwyer Has Not Purposefully Availed Himself of the Privilege of Conducting Business in Massachusetts.

Nonresident defendants cannot "be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts… or [as a result] of the unilateral activity of another party or third person." *Burger King* 471 U.S. at 475 (internal citations and quotations omitted). Thus, even assuming that a plaintiff can prove that a nonresident defendant has sufficient forum-related contacts, those contacts alone will not establish specific jurisdiction. A plaintiff must also prove (1) that the nonresident defendant "purposefully availed himself of the privilege of conducting activities in the state," such that (2) the defendant "should reasonably anticipate being haled into court there." *Ticketmaster-New York, Inc., v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994) (internal quotation omitted). Here, Plaintiffs cannot show either of these two required steps— voluntariness or forseeability.

The voluntariness requirement ensures that the nonresident defendant has invoked the privilege of conducting activities in the forum through "a series of personalized affirmative choices reaffirmed at every significant juncture." *Id.* at 209. Thus, the First Circuit has rejected the argument that due process has a transitive property that would allow "a letter from A to B that reports on C's actions [to] confer personal jurisdiction over C in B's home state based on those actions." *Mass. Sch. of Law.* 142 F.3d at 35-36. To satisfy the voluntariness requirement, C must choose to send the letter to B himself. *See id.*

Forseeability, the second step in determining whether purposeful availment is met, requires proving that the defendant could have foreseen that a plaintiff in the particular forum state at issue might subject the defendant to suit there—not simply that

the defendant might have foreseen that his conduct might cause injury in some unknown foreign state. *Cf. Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 112 (1987) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."); *Protective Factors Inc. v. Am. Broad. Cos., Inc.*, 30 Media L. Rep. 2207, 2002 WL 1477174 at *3 (D. Mass 2002) (dismissing defamation claim and noting that "[i]t is probably true that a person who is interviewed by a national media outlet can foresee that her interview will be disseminated to distant jurisdictions. But it is a further step to conclude that such a person has a reasonable expectation that she can be sued anywhere the broadcast is aired").

Mr. Dwyer's limited and attenuated contacts with Massachusetts cannot meet either requirement. First, he did not voluntarily send any communication into Massachusetts. The SEC filings, which Plaintiffs allege contain misrepresentations, were received only after defendant Holiday provided them to Plaintiffs. (*See* Compl. ¶ 64(ii); Dwyer Decl. ¶ 10.) Because Mr. Dwyer did not personally send Plaintiffs the SEC filings, Plaintiffs' attempt to predicate jurisdiction over Mr. Dwyer through Bally's SEC filings represents the kind of "transitive view" of minimum contacts that the First Circuit has rejected. Holiday's actions cannot serve as the basis for personal jurisdiction over Mr. Dwyer.

Second, as in *Protective Factors*, the forseeability component cannot be satisfied. Mr. Dwyer could not have foreseen being haled into a Massachusetts court any more than the defendant in *Protective Factors*, who allegedly made defamatory statements on national television, could have. Both defendants made statements only to the public at large; they did not direct their statements into Massachusetts.

3. **It is Unreasonable to Subject Mr. Dwyer to Personal Jurisdiction in Massachusetts.**

Due process also requires that any exercise of personal jurisdiction be reasonable. *E.g. Burger King*, 471 U.S. at 476. Five factors guide the reasonableness inquiry: (1) the defendant's burden of appearance; (2) the interest of the forum; (3) the plaintiff's convenience; (4) extent to which the forum will afford the most efficient judicial resolution of the controversy; and (5) the common interest of sovereigns in promoting substantial social policies. *Ticketmaster*, 26 F.3d at 209. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at 210.

Subjecting Mr. Dwyer to the jurisdiction of Massachusetts courts is patently unreasonable, especially given the fundamental weaknesses of Plaintiffs' showing on the first two prongs. The First Circuit has recognized that the defendant's burden of appearance is "always a primary concern" when considering the reasonableness of jurisdiction. *Id.* Forcing Mr. Dwyer to travel nearly one thousand miles to Massachusetts to defend himself in this action would be burdensome; he has no reason to travel here but for this action. *See LaForest v. Ameriquest Mortgage Co.*, 383 F. Supp. 2d 278, 287 (D. Mass. 2005) (dismissing for lack of personal jurisdiction where California resident would be forced to defend a suit in Massachusetts for actions taken on behalf of his employer). Moreover, much of the evidence and many of the witnesses relating to the claims that Plaintiffs allege against Mr. Dwyer are located in Illinois. And the central fact issue against him will likely surround Bally's financial reporting and accounting processes; most, if not all, of the documents and witnesses to that process are

located in Illinois, an alternative forum where there are currently cases pending that raise similar factual issues. Accordingly, Massachusetts would not be the most efficient forum in which to adjudicate this matter against Mr. Dwyer.

## **CONCLUSION**

As discussed above, because Plaintiffs cannot show either that their cause of action arises from Mr. Dwyer's having transacted business in Massachusetts or that they have suffered a tortious injury caused by an act or omission in Massachusetts, the Massachusetts long-arm statute does not authorize personal jurisdiction over Mr. Dwyer. Moreover, due process bars application of the statute because Mr. Dwyer lacks sufficient minimum contacts with Massachusetts to be subject to personal jurisdiction there. For each of these reasons, Plaintiffs' claims against Mr. Dwyer should be dismissed for lack of personal jurisdiction.

By: _____
Howard S. Suskin (admitted pro hac vice)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Phone: (312) 923-2928
Fax:    (312) 840-7604
Email:  hsuskin@jenner.com

Richard M. Gelb (BBO # 188240)
Robert S. Messinger (BBO #651396)
GELB & GELB LLP
20 Custom House Street
Boston, MA 02110
Phone: (617) 345-0010
Fax:    (617) 345-0009
Email:  rgelb@gelbgelb.com

Dated: November 30, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by mail on this 30th day of November, 2005 upon the attorney of record for each party having appeared in this case.

_____