UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Fit Tech, Inc., Planet Fitness Center, Inc., Planet Fitness Center of Maine, Inc., Planet Fitness Center of Dartmouth, Inc., Planet Fitness Center of Salem, Inc., Planet Fitness Center of Brighton, Inc., Stratford Fitness Center, Inc., David B. Laird and Scott G. Baker<br><br>              Plaintiffs,<br><br>v.<br><br>Bally Total Fitness Holding Corporation, Holiday Universal, Inc., Paul Toback, Lee Hillman and John Dwyer,<br><br>              Defendants. | C.A. No. 05-10471 MEL |

**PLAINTIFFS' OPPOSITION TO ALL INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND CROSS MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY**

Plaintiffs submit this memorandum in opposition to the three pending motions to dismiss filed by the individual Defendants Paul Toback ("Toback"), Lee Hillman ("Hillman") and John Dwyer ("Dwyer"). Plaintiffs urge the Court to deny these motions because, based upon the facts of record, including those set forth in the Affidavit of David B. Laird In Opposition To Defendants' Motion To Dismiss On Personal Jurisdiction Grounds filed herewith (herein "Laird Affidavit"), the Court plainly may assert personal jurisdiction over these individual Defendants under both the Massachusetts long-arm statute and the United States Constitution. If, on the other hand, the Court determines that the factual record is insufficient, Plaintiffs request that the Court stay its ruling and grant leave to Plaintiffs to take discovery on the jurisdictional issues raised by the individual Defendants in their motions.

## FACTUAL BACKGROUND

The factual background for these motions is set forth in some detail in the Laird Affidavit and need not be repeated here. In summary, Plaintiffs contend that the corporate Defendants Bally Total Fitness Holding Corporation and Holiday Universal, Inc. (collectively herein referred to as "Bally"), with the active participation of each of the individual Defendants, (i) defrauded them in connection with the sale of the Plaintiffs' health clubs to Bally in April 2002, and (ii) after that sale perpetrated a fraudulent, unfair and deceptive scheme to deprive them of the fruits and benefits of the contract of sale, including without limitation the $12 million Earn-Out payment they were due.

Plaintiffs have alleged several counts against the individual Defendants arising from this wrongful conduct. In Count II, Plaintiffs seek damages against the individual Defendants for common law deceit. In Counts IV and V, Plaintiffs seek compensatory and punitive damages against the individual Defendants for their unfair and deceptive acts and practices, under Mass. Gen. Laws ch. 93A and its Illinois equivalent. Under Count VI, Plaintiffs seek damages and other relief against the Defendants for their violations of the Massachusetts Blue Sky Law, M.G.L. ch. 110A.

## ARGUMENT

**I.    Plaintiffs need only make a *prima facie* showing of personal jurisdiction at this stage in the litigation.**

When faced with a challenge to its personal jurisdiction over a defendant, the Court may adopt one of several methods for determining the issue.

> "'The most conventional of these methods,' known as the 'prima facie' method, *Foster-Miller, 46 F.3d at 145*, 'permits the district court to 'consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'"

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).

In applying the *prima facie* method, the Court:

> "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.' . . . We take these facts 'as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim.'"

Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) and Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

## II.   This Court has jurisdiction over the individual Defendants under the Massachusetts long-arm statute and the exercise of jurisdiction comports with Due Process.

Under well-settled authority, this Court may assert personal jurisdiction over each of the individual Defendants under the Massachusetts long-arm statute, M.G.L. ch. 223A § 3, and the exercise of jurisdiction in this case comports with Due Process.

The Courts have consistently and uniformly held that, where a defendant knowingly sends into Massachusetts a false statement, intending that it should there be relied upon to the injury of a resident of Massachusetts, he has, for jurisdictional purposes, acted within the state and the exercise of personal jurisdiction over that person is consistent with both the Massachusetts long-arm statute and Due Process. Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Circuit 1972); The Ealing Corporation v. Harrods Limited, 790 F.2d 978 (1st Cir. 1986); Whittaker Corporation v. United Aircraft Corporation, 482 F.2d 1079 (1st Cir. 1973); JMTR Enterprises, LLC v. Duchin, 42 F.Supp 2d 87, 97-8 (U.S.D.C. Mass. 1999); Burtner v. Burnham, 13 Mass. App. 158, 430 N.E. 2d 1233 (1982).

The conduct of each of the individual Defendants falls within this line of cases.

**Toback:** Defendant Paul Toback, Bally's Chief Operating Officer ("COO") and Executive Vice President at the time of the sale, was intimately involved in the negotiation of the sale and the Asset Purchase Agreement. Prior to the closing, he traveled to Massachusetts for

two days to tour the Plaintiffs' clubs and negotiate the terms of sale.  During that trip, Toback made numerous representations to the Plaintiffs which they allege were untrue when made, including the representation that Bally did not intend to take the operation of the clubs away from Mr. Laird and Mr. Baker during the two-year Earn Out period, that Bally would promptly install "supplemental services" such as pro shops and juice bars in the Plaintiffs' clubs, which would increase their profits by 50%, and that Bally was excited about the new clubs the Plaintiffs had on the drawing board and intended to quickly construct and open those clubs, under Laird's and Baker's management, after the sale closed. (Laird Affidavit pars. 11-15.)

Toback also attended at least two meetings in Chicago -- both of which he ran – to negotiate the terms of the sale with Laird and Baker, at which he and other Bally representatives in his presence repeated these false representations. Id. pars. 11-16.

In addition, Toback's intimate and substantive involvement in the negotiation of the sale compels the inference that Toback was aware (a) that the Asset Purchase Agreement and the closing documents each represented and warranted that Bally's financial statements and other SEC filings were accurate and (b) that these representations and warranties were directed to the Plaintiffs who were Massachusetts residents (particularly to the principal owners of the clubs, Mr. Laird and Mr. Baker, both of whom are life-long residents of Massachusetts)..  Toback also had reason to know that these financial statements and SEC filings in fact overstated the financial performance of Bally, both because – as Bally's COO – he would have been involved in generating these statements and filings, and because he was personally involved in perpetrating a fraudulent scheme in which Bally falsely booked revenue for "Starter Kits" it did not in fact sell to new members.  (Laird Affidavit par. 24-28.)

In addition to these pre-sale false statements that Toback directed to the Plaintiffs in Massachusetts, Toback also participated in the post-sale scheme to oust Laird and Baker from the management of their clubs.  In particular, it was Toback that summoned Laird and Baker to Chicago in May 2003 (through an email sent by his subordinate to Laird in Massachusetts) based on the false representation and assurance that they were being called in, not to discuss their lawsuit, but to discuss "management" matters. Once he had them without their counsel, Toback ambushed Laird and Baker by first insisting on discussing the allegations of their lawsuit and then presenting them with a radical plan to restructure their clubs.  When Laird and Baker balked, Toback's subordinate composed and sent into Massachusetts a memorandum that falsely stated that Laird and Baker had agreed to this restructuring plan (which required their agreement under the Asset Purchase Agreement) and also left a voice mail on Laird's answering machine in Massachusetts to the same effect.  It is fair to assume (particularly absent any discovery) that this subordinate was acting at Toback's direction in connection with the implementation of Toback's squeeze-out plan. (<u>Laird Affidavit</u> par. 19-23).

Plaintiffs, of course, are not privy to all the internal discussions which preceded these actions, or the later suspension of Laird and firing of Baker.  Plaintiffs anticipate, however, that once they are permitted to take discovery, they will find that Toback was orchestrating all the post-sale efforts to squeeze the Plaintiffs out of their clubs and deny them the benefits of their agreements.

**Lee Hillman**:  Contrary to his sworn affidavit in this case, Hillman was involved in the discussions and negotiations that led up to the signing of the Asset Purchase Agreement.  He attended at least two meetings in Chicago with Laird and Baker and, at some point prior to the

closing, traveled to Massachusetts and visited some of the Plaintiffs' health clubs, including their flagship club in Downtown Boston. (Laird Affidavit par. 29-33.)

Hillman, according to Bally, was also responsible for the preparation and filing of false and fraudulent financial statements and SEC filings, which were represented to be accurate in the Asset Purchase Agreement and the closing documents and upon which the Plaintiffs relied. Because of Hillman's involvement in the meetings to negotiate the terms of the sale, and his prior involvement in acquisitions like this, it is fair to infer that he was aware that the false Bally financial statements and SEC filings would be represented and warranted to be accurate in the Asset Purchase Agreement and closing documents sent to the Plaintiffs in Massachusetts. In addition, Hillman made specific misrepresentations to Plaintiff Baker concerning Bally and its stock value, including that: (i) Bally stock was a "bargain" at $23 per share; (ii) that Bally's stock (which was then trading near $23 per share) had been trading at $36 per share and was going to return to that price; and (iii) that Bally's financial prospects going forward were excellent because Bally was growing, was "cutting edge" and was the market leader.  These statements, though made in Chicago, were obviously intended to persuade Mr. Baker and the Plaintiffs to accept Bally's offer of stock instead of cash and Hillman must have known and intended that Baker and the Plaintiffs – all Massachusetts residents selling Massachusetts health clubs – would rely on these representations and assurances and suffer damage in Massachusetts as a result. Id.

**John Dwyer:**  John Dwyer was Bally's Chief Financial Officer during the relevant time periods.  Dwyer signed all the financial statements and SEC filings that were warranted in the Asset Purchase Agreement and the closing documents and upon which the Plaintiffs relied in entering into the sale.  Dwyer admits that he read the Asset Purchase Agreement (Declaration of

- 6 -

<u>John Dwyer In Support of his Motion To Dismiss For Lack of Personal Jurisdiction</u> dated November 23, 2005 at par. 8 (herein "Dwyer Declaration")), so he must have known that these SEC filings were being (falsely) warranted as accurate in these documents, that these documents were being sent to Massachusetts and that they were being relied upon by Massachusetts residents. Bally itself has accused Dwyer of intentional wrongdoing in the preparation of false financials and have also accused Dwyer of making false statements to the SEC. (<u>Laird Affidavit</u> par. 34-36).

*   *   *   *   *   *   *

In a similar case arising in Oregon, the Oregon Federal District Court recently denied nearly identical motions to dismiss brought by Hillman and Dwyer. <u>Garrison v. Bally Total Fitness Holding Corporation</u>, U.S.D.C. Oregon Civil No. 04-1331-PK, <u>Order</u> dated November 23, 2005. The plaintiffs in <u>Garrison</u> had also sold their health clubs to Bally and received the same kind of representations and warranties concerning Bally's financials and SEC filings.[1]

**III.   <u>If the Court finds Plaintiffs' evidentiary proffer insufficient, the Court should stay its ruling and grant Plaintiffs leave to take discovery on jurisdictional issues.</u>**

Plaintiffs firmly believe that the evidentiary proffer they have made, principally through the <u>Laird Affidavit</u>, is more than sufficient to satisfy the requirement for a *prima facie* showing of personal jurisdiction. If, however, the Court finds this proffer insufficient, rather than grant the Defendants' motions, the Court should grant Plaintiffs leave to take discovery on the jurisdictional issues.[2] <u>Surpitski v. Hughes-Keenan Corp.</u>, 362 F.2d 254, 255-6 (1st Cir. 1966);

---

[1]   The purchase agreement in <u>Garrison</u> contained a provision setting a time limit on claims brought for breach of these representations and warranties which is not present in the Asset Purchase Agreement at issue in this case.

[2]   Discovery has been stayed in this action pending Bally's release of its restated financials (which finally came out November 30, 2005), the filing of an amended complaint (due 60 days later) and

Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973); Sunview Condominium Association v. Flexel International Ltd., 116 F.3d 962, 964 (1st Cir. 1997)("After all, a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.").

Discovery on the jurisdictional issues can reasonably be expected to adduce the following:

- Further evidence of Toback's role in controlling and supervising the negotiations of the sale, including his role in causing his subordinates/agents to direct communications into Massachusetts which were false or misleading.

- Further evidence of Toback's role in the May 2003 scheme pursuant to which Toback's subordinate, John Wildman, sent false statements into Massachusetts to the effect that Laird and Baker had agreed to a radical restructuring of their clubs and roles.

- Further evidence of Toback's involvement in orchestrating the overall scheme to push Laird and Baker out of the management of their Massachusetts clubs in order to deprive them of their Earn Out.

- Further evidence of Hillman's involvement in the sale transaction, including evidence of his knowledge and intent that the representations and warranties concerning Bally's false and misleading financials would be sent into Massachusetts for the purpose of misleading the Plaintiffs.

- Further evidence of Dwyer's role in directing the negotiations of the sale;

---

disposition of motions to dismiss, pursuant to the jointly proposed Scheduling Order entered August 19, 2005.

- Further evidence of Dwyer's contacts with Massachusetts, including evidence concerning the nature, purpose and timing of the 10 to 15 trips he says he made to Massachusetts (Dwyer Declaration at par. 5).

## CONCLUSION

For the foregoing reasons, the Court should deny the three motions to dismiss filed by Toback, Hillman and Dwyer. Alternatively, if the Court finds the Plaintiffs proffer of evidence insufficient, the Court should stay its ruling and grant leave to the Plaintiffs to take discovery on the jurisdictional issues.

> **FIT TECH, INC.,** *et al.*,
> Plaintiffs,
> By their attorney,
>
> s/ Stephen W. Rider_____
> Stephen W. Rider, Esq., BBO # 419820
> Stephen W. Rider, P.C.
> 350 Lincoln Street – Suite 2400
> Hingham, MA 02043
> Tel: 781-740-1289
> Fax: 781-207-9160
> Email: stephen.rider@swrpc.com

Dated: January 17, 2006

## CERTIFCATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 17, 2006.

> s/ Stephen W. Rider_____