IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JACK GARRISON and DEANE GARRISON, | ) | Civil No. 04-1331-JE |
| | ) | |
| Plaintiffs, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| BALLY TOTAL FITNESS HOLDING | ) | |
| CORPORATION, LEE S. HILLMAN | ) | |
| and JOHN W. DWYER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Richard M. Layne
Layne & Lewis LLP
111 S.W. Columbia Street, Suite 1000
Portland, OR 97201

Mark McGranaghan
Bittner & Hahs, P.C.
4949 S.W. Meadows Road, Suite 260
Lake Oswego, OR 97035

Attorneys for Plaintiffs

Richard L. Baum
Elizabeth Schwartz
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128

    Attorneys for Defendant Bally Total Fitness Holding

Arden E. Shenker
Robert E. L. Bonaparte
Shenker & Bonaparte, LLP
One S.W. Columbia Street, Suite 475
Portland, OR 97258

Gregory A. Markel
Gregory G. Ballard
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

    Attorneys for Defendant Lee S. Hillman

Jeff Pitzer
101 S.W. Main Street
Portland, OR 97204

Howard S. Suskin
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

    Attorneys for Defendant John W. Dwyer

JELDERKS, Magistrate Judge:

Plaintiffs Jack Garrison and Deane Garrison bring this action arising from their sale and acquisition of certain securities against defendants Bally Total Fitness Holding Corporation (Bally), Lee Hillman, and John Dwyer. Defendants Hillman and Dwyer move to dismiss for lack of personal jurisdiction. Defendant Bally moves to dismiss plaintiffs'

2 - FINDINGS AND RECOMMENDATION

breach of contract and fraud claims for failure to state claims upon which relief may be granted.  In its memoranda, defendant Bally also contends that plaintiffs' fraud claim is not plead with the particularity required under Fed. R. Civ. P. 9(b).

The motion to dismiss the individual defendants should be denied.  The motion to dismiss the breach of contract and fraud claims should be granted.

**BACKGROUND**

The following facts, which are derived from the complaint and memoranda and supporting declarations, are accepted as true only for the purposes of analyzing the pending motions.

This action arises from plaintiffs' sale of their majority interest in Nautilus Plus of Oregon, Inc. (Nautilus) to defendant Bally in a transaction that closed on May 17, 2000.  The sale was carried out through a Stock Purchase Agreement (Agreement) between plaintiffs and Bally dated November 29, 1999.  Pursuant to the Agreement, plaintiffs each exchanged their interest in Nautilus for approximately 101,720 shares of Bally common stock, which was then valued at $27 per share, based upon the closing price of Bally's stock on the New York Stock Exchange shortly before the transaction was concluded.

3 - FINDINGS AND RECOMMENDATION

Defendant Bally is a Delaware company that operates fitness centers in several countries, including the United States.  Its principal place of business is located in Illinois.

Defendants Hillman and Dwyer, both citizens and residents of Illinois, are former officers and directors of defendant Bally.  Defendant Dwyer was the Executive Vice President, Chief Financial Officer (CFO), and Treasurer while the negotiations for the sale were pending and when he signed the Agreement on Bally's behalf.  As defendant Bally's CFO, defendant Dwyer was involved in preparing and filing financial statements that were filed with the SEC and provided to the financial markets in press releases.

Defendant Dwyer has traveled to Oregon two or three times during the past 30 years.  All of his visits have been in conjunction with his employment, and he has not transacted any business in this state on his own behalf.  Defendant Dwyer did not travel to Oregon in connection with the purchase of Nautilus.  Though he signed the Agreement in his capacity as CFO on defendant Bally's behalf, he did not participate in the negotiations with plaintiffs or negotiate with other businesses or individuals in this state.

In the Agreement that defendant Dwyer signed, Bally made the following "Representations and Warranties" concerning its reports and financial statements:

> Parent has filed all required reports, schedules, forms, statements, and other documents required to be filed by it with the SEC since January 1, 1998 (collectively, including all exhibits thereto, the "Parent SEC Reports"). None of the Parent SEC Reports, as of their respective dates . . . contained or will contain any untrue statement of a material fact or omitted or will omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. Each of the financial statements (including the related notes) included in the Parent SEC Reports presents fairly, in all material respects, the consolidated financial position and consolidated results of operations and cash flows of Parent and its Subsidiaries as of the respective dates or for the respective periods set forth therein, all in conformity with GAAP [Generally Accepted Accounting Principles] consistently applied during the periods involved . . . . All of such Parent SEC Reports as of their respective dates . . . complied as to form in all material respects with the applicable requirements of the Securities Act and the Exchange Act and the rules and regulations promulgated thereunder.

Section 8.06 of the Agreement provided that the relevant representations and warranties would terminate 18 months after the closing date, and that "any and all claims and causes of action for indemnification . . . with respect [to such representations and warranties] shall terminate 18 months after the Closing Date" of the transaction. That 18 month period expired on January 17, 2002. Section 10.08 provided

that the Agreement would be "governed and construed" according to the laws of the United States and Oregon.

Defendant Hillman was defendant Bally's President, Chief Executive Officer (CEO), and Chairman of the Board of Directors when the transaction was negotiated and closed. On May 17, 2000, the day the transaction closed, Hillman signed and provided to plaintiffs a document titled "Bally Total Fitness Corporation Officer's Certificate."

In the "Officer's Certificate," defendant Hillman certified that he was defendant Bally's "duly elected President," and that

> 1. Purchaser has performed and complied in all material respects with the agreements and covenants required to be performed and complied with by it under that certain Purchase Agreement dated as of November 29, 1999, and amended as of April 7, 2000, April 25, 2000, and May 12, 2000 (the "Agreement"), by and among Purchaser, Parent, the Garrisons, the ESOP, the Class B Shareholders, the Company, the Sellers and the Seller Representative, all as defined therein, prior to the date hereof, and

> 2. All of the representations and warranties of the Purchaser contained in Article IV of the Agreement that are qualified as to materiality are true and correct, and those that are not so qualified are true and correct in all material respects, on and as of the date hereof as though restated on and as of the date hereof except, in each case, to the extent that the representations or warranties expressly relate to a date earlier than the date hereof; except where the failure of one or more representations or warranties to be true and correct, individually or in the aggregate, would not reasonably be expected to result in a material adverse effect on the expected benefits to the

6 - FINDINGS AND RECOMMENDATION

sellers of the transactions contemplated under the
Agreement.

Defendant Hillman traveled to Oregon six times to conduct
business for defendant Bally.  He made two of the visits to
negotiate the Agreement with plaintiffs, and traveled to
Oregon at least two more times after the transaction had
closed in order to inspect Nautilus facilities and meet with
employees.  Defendant Hillman did not sign the Purchase
Agreement, and has not transacted business or owned or rented
property in Oregon on his own behalf.

On February 9, 2000, some three months before the
transaction closed, defendant Bally issued a press release
reporting its financial results for the fourth quarter and the
end of the 1999 fiscal year.  In that release, defendant Bally
reported diluted earnings of $1.56 per share, an operating
income of $93.3 million, and net reserves of $728 million.
These figures were also included in defendant Bally's Form
10-K, which was signed by defendants Hillman and Dwyer and
filed with the SEC at the end of March, 2000.

Defendant Hillman commented on these results as follows:

> We are very pleased with our quarterly and
> full-year results and, in particular, that we
> have continued to deliver on our plans for
> improving earnings and cash flows.  Since 1996,
> when the Company lost more than $2.00 per
> share, we have executed against our business
> plan with earnings per share now at $1.56.
> During 1999 we continued investing to grow our

> business - - opening 22 new fitness centers,
> upgrading and expanding dozens of our existing
> clubs and acquiring 24 additional fitness
> centers, ending the year with 363 clubs in
> total. Also, during the fourth quarter we
> launched our redesigned website and have begun
> a concerted effort to develop strategic web-
> based partnerships, which we expect to become
> more important in years to come. These
> investments, when coupled with our expanding
> offerings of products and services, provide us
> with a dynamic foundation for continued growth
> and profit improvement.

Defendant Bally's original Form 10-K for 1999 did not conform to Generally Accepted Accounting Principles (GAAP) and Bally's own internal policies because it prematurely recognized revenue on certain non-obligatory prepaid membership dues. Contrary to the figures set out in the 1999 Form 10-K and the February 9, 2000 press release, defendant Bally did not earn $1.56 per share during fiscal year 1999, but instead lost $1.66 per share during that period. This discrepancy was concealed until defendant Bally filed an Amended Annual Report for the year ending on December 31, 2003. In that Report, defendant Bally restated its earnings for fiscal year 1999 as a loss of $1.66 per share.

On April 28, 2004, defendant Bally issued a press release reporting that defendant Dwyer had resigned, "effective immediately," as Bally's CFO, and that the SEC Enforcement Division was investigating the company in connection with the restatement of revenues from non-obligatory prepaid membership

8 - FINDINGS AND RECOMMENDATION

dues which accelerated the company's recognition of income. In response to this announcement, defendant Bally's shares traded heavily, and declined approximately 17% in value to close at $4.50 per share.

Before April 28, 2004, plaintiffs could not reasonably have discovered that defendants had made the misrepresentations and omissions of material fact giving rise to this action because defendants Bally and Dwyer intentionally concealed the truth.

## CLAIMS

Plaintiffs allege that the "Representations and Warranties" included in the Agreement that Dwyer signed and the "Officer's Certificate" provided by defendant Hillman were both false, and that these defendants knew or should have known they were false when they were issued.  They further allege that the misrepresentations in those documents were made intentionally to induce plaintiffs to sell their Nautilus stock and accept shares of Bally stock at an artificially inflated price.  Plaintiffs allege that the individual defendants "participated or materially aided in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged [in the complaint] in connection with the sale of Bally common stock

9 - FINDINGS AND RECOMMENDATION

to Plaintiffs and in connection with the purchase of Nautilus
common stock from Plaintiffs as alleged [in the complaint],
all in violation of the Oregon Securities Act."  Complaint,
p. 6.  They allege that defendants Dwyer and Hillman
"participated or materially aided in the drafting,
preparation, and/or approval of the various public and
shareholder and investor reports and other communications
complained of [in the complaint] and omitted to disclose the
true facts in connection with the sale of Bally common stock
to Plaintiffs in connection with the purchase of the Nautilus
common stock from Plaintiffs . . . in violation of the Oregon
Securities Act."  Id.  Plaintiffs add that they relied on
defendants' express representations, the integrity of the
market price of Bally stock and market information relating to
Bally, and on a Form 10-K filed on March 31, 2000, that
defendants Hillman and Dwyer signed.  Id. at 9.

Plaintiffs' first claim alleges that all defendants
violated ORS 59.115 and ORS 59.135, which impose liability
upon those who sell securities or control those who sell
securities by use of untrue statements of material fact or
material omissions.

Plaintiffs' second claim alleges that all defendants
violated ORS 59.127, which imposes liability on those who

purchase or solicit the purchase of securities by means of untrue statements of material fact or material omissions.

Plaintiffs' third claim alleges that defendant Bally breached its contractual representation that the financial statements it filed with the SEC were true and correct.

Plaintiffs' fourth claim alleges that all defendants committed common law fraud by making material misrepresentations and omissions in the transaction in question.

**PENDING MOTIONS**

I.  Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

A. Standards for evaluating personal jurisdiction

A plaintiff bears the burden of establishing jurisdiction.  Forsythe v. Overmyer, 576 F.2d 779, 781 (9th Cir.), cert. denied, 439 U.S. 864 (1978).  Where, as here, the court considers a motion to dismiss for lack of jurisdiction without conducting an evidentiary hearing, the plaintiff is required only to make a *prima facie* showing of jurisdictional facts in order to withstand the motion.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).  This means that a plaintiff must only demonstrate facts that, if true, would support jurisdiction.  Id.

11 - FINDINGS AND RECOMMENDATION

In determining whether it may exert jurisdiction over a non-consenting out-of-state defendant, a federal court must consider whether the forum state's long-arm statute permits the assertion of jurisdiction and whether the assertion of jurisdiction violates the defendant's federal constitutional due process rights.  See Fireman's Fund Ins. Co. v. National Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996).  Two jurisdictional provisions of Oregon law are relevant to the analysis of jurisdiction here:  Under Or. R. Civ. P. 4J, in actions arising under Oregon Securities law, Oregon courts are explicitly accorded jurisdiction over "[a]ny . . . nonresident of this state, who has engaged in conduct prohibited or made actionable under the Oregon Securities Law."  Under Or. R. Civ. P. 4L, Oregon courts may assert jurisdiction to the limits allowed by the Oregon and United States Constitutions.

The due process clause of the United States Constitution protects persons from being subject to the binding judgments of a forum with which they have established no meaningful contacts, ties, or relations.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (citing International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945).  Jurisdiction is proper only where a defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate

12 - FINDINGS AND RECOMMENDATION

being brought into court in the forum state.  World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be either "general" or
"specific."  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.
1990).  General jurisdiction exists where a nonresident
defendant's contacts with the forum state are substantial or
continuous and systematic.  Id.  The factors courts consider
in determining the existence of general jurisdiction include:
whether the defendant makes sales, solicits or engages in
business, serves the state's markets, designates an agent for
service of process, holds a license, or is incorporated in the
forum state.  Bancroft & Masters, Inc. v. Augusta National,
Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

Specific jurisdiction, which may exist in the absence of
such substantial contacts, requires analysis of the nature and
quality of a defendant's contacts with the forum state in
relation to the cause of action asserted.  See id.  The court
may exercise "specific" jurisdiction over a non-consenting
nonresident defendant only if the defendant has done some act
by which he purposefully avails himself of the privilege of
conducting activities in the forum, the claim arises out of or
results from the defendant's forum-related activities, and the
exercise of jurisdiction is reasonable.  Ballard, 65 F.3d at
1498.

13 - FINDINGS AND RECOMMENDATION

In tort cases, the first requirement of specific jurisdiction--"purposeful availment"--may be satisfied where an action in another jurisdiction is "aimed at and has effect in the forum state . . . ." Bancroft, 223 F.3d at 1087 (citing Calder v. Jones, 465 U.S. 783 (1984)). This "effects test" is satisfied if the defendant has "1) committed an intentional act, which was 2) expressly aimed at the forum state, and 3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." Id. (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998)).

The second requirement for specific jurisdiction--that the claim asserted arises out of the defendant's forum-related activities--is satisfied if the plaintiff would not have been injured "but for" the defendant's conduct directed toward the plaintiff in the forum. Ballard, 65 F.3d at 1500.

In analyzing the third requirement for specific jurisdiction--that the assertion of jurisdiction be reasonable--courts in this circuit consider: (1) the extent of the defendant's purposeful interjection into the forum; (2) the burden that defending the action in the chosen forum would impose upon a defendant; (3) the extent of any conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) which forum may most

14 - FINDINGS AND RECOMMENDATION

efficiently resolve the dispute; (6) the importance of the
chosen forum to the plaintiff's interest in convenient and
effective relief; and (7) the existence of an alternative
forum.  Gray & Co. v. Firstenberg Machinery Co., Inc., 913
F.2d 758, 761 (9th Cir. 1990).  If a plaintiff establishes
purposeful availment in the forum state, the exercise of
jurisdiction in that forum is presumptively reasonable, and a
defendant must present a compelling case to demonstrate that
jurisdiction is, in fact, unreasonable.  Roth v. Garcia
Marquez, 942 F.2d 617, 625 (9th Cir. 1991).


    B. Analysis
        1. Applicability of "Fiduciary Shield" Doctrine

    Defendants Dwyer and Hillman contend that, because all of
their contacts with Oregon were made in the context of their
capacity as defendant Bally's officers, they are protected
from personal jurisdiction in this state by the "fiduciary
shield" doctrine.  They further contend that, even if they
were not subject to such protection, their contacts with
Oregon are insufficient to support the assertion of personal
jurisdiction.

    The "fiduciary shield" doctrine holds that a corporate
official "who has contact with a forum only in the performance
of his official duties is not subject to the personal

15 - FINDINGS AND RECOMMENDATION

jurisdiction of the courts of that forum." <u>Sidco Indus. v.</u> <u>Wimar Tahoe Corp.</u>, 768 F. Supp. 1343, 1349 (D. Or. 1991). This "shield" is not absolute: the corporate form and the protection it generally affords may be disregarded if "the corporation is the agent or alter ego of the individual defendant . . . or where there is an identity of interests between the corporation and the individuals." <u>Davis v. Metro</u> <u>Productions, Inc.</u>, 885 F.2d 515, 520-21 (9th Cir. 1989) (citations omitted).

Whether a "fiduciary shield" will protect individuals who commit acts through their positions as corporate officers or employees from the assertion of personal jurisdiction is not a question of constitutional significance. <u>See</u> <u>id.</u> at 521 (though assertion of personal jurisdiction in general is issue of "constitutional dimension," Supreme Court has indicated that existence of "jurisdictional corporate shield" is not constitutional issue).  In <u>Calder v. Jones</u>, 465 U.S. 783 (1984), and <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 781 n. 13 (1984), the Court stated that corporate employees' status as employees did not protect them from jurisdiction. In those decisions, "the Supreme Court applied the constitutional due process analysis to the contacts of the individuals concerned; it did not consider the existence of a

state-created corporate form to create a due process limit on jurisdiction." Davis, 885 F.2d at 521.

Whether a court's assertion of personal jurisdiction over a non-consenting nonresident is limited by a "fiduciary" or "corporate" shield turns on a given state's "long-arm" jurisdiction. See id. at 522 (analyzing Arizona precedent and concluding that Arizona's "long-arm" statute allowed assertion of jurisdiction to constitutional due process limit because it was not "limited by the fiduciary shield doctrine"). Accordingly, the question here is whether Oregon limits the reach of its "long-arm" jurisdiction through the application of a "fiduciary" or "corporate" shield.

Defendants Hillman and Dwyer cite several decisions that support the conclusion that the reach of Oregon's "long-arm" jurisdiction is ordinarily limited by the application of the "fiduciary shield" doctrine. In Wong v. Wong, 134 Or. App. 13, 18, 894 P.2d 519 (Or. App. 1995) the Oregon Court of Appeals affirmed the trial court's conclusion that it lacked personal jurisdiction over the president of a corporation who had allegedly misrepresented the corporation's financial condition. The court concluded that, in the absence of evidence that the defendant acted as the "alter ego" of the partners, signing a letter in his capacity as president was

not an act taken "by him individually," and could not constitute purposeful contact with the state on his part.  Id.

On several occasions this court has also concluded that a fiduciary shield protected an individual who acted on behalf of a corporation from personal jurisdiction in this forum.  In Sidco, 768 F. Supp. at 1349, the court dismissed a defendant whose contacts with Oregon arose only from his position as an officer and principal in the defendant corporation on the grounds that a "corporate officer who has contact with a forum only in performance of his official duties is not subject to the personal jurisdiction of the courts in that forum."  In Pacific Cornetta, Inc. v. Jung, 218 F.R.D. 250, 255 (D. Or. 2003), the court dismissed individual defendants who were corporate officers and principals on the grounds that "their official capacities as representatives of the companies are insufficient to create a basis for jurisdiction."  In EQ Solutions, LLC v. Funk, CV No. 04-6070, 2004 WL 816850 at *1 (D. Or. April 14, 2004), the court dismissed an action against an individual who had made several trips to Oregon in his capacity as a corporate representative.  The court held that the fiduciary shield precluded plaintiffs from "relying on these contacts to establish jurisdiction over defendant in his official capacity."  Id.

Though these decisions support the conclusion that Oregon may generally apply the "fiduciary shield" doctrine in considering whether jurisdiction over a non resident corporate officer or agent is appropriate, this doctrine does not apply under the particular circumstances of this action.  No "fiduciary shield" limiting the reach of Oregon long arm jurisdiction is found in any provision of Oregon statutes or Oregon Rule of Civil Procedure.  Instead, the "fiduciary shield" doctrine "is a doctrine based on judicial inference as to the intended scope of the long arm statute."  Marine Midland Bank, N.A. v. Miller, 664 F.2d 889, 902 n. 3 (2d Cir. 1981) (citing United States v. Montreal Trust Co., 358 F.2d 239, 243 (2d Cir. 1966)).

In actions alleging violation of Oregon securities law, there is no need for "judicial inference" in analyzing the reach of Oregon's long-arm statute: Under Or. R. Civ. P. 4J, the scope of that statute explicitly encompasses "[a]ny person, a resident or nonresident of this state, who has engaged in conduct prohibited or made actionable under the Oregon Securities Law."  In the face of this explicit delineation of jurisdictional authority, in actions alleging violation of Oregon securities laws, Oregon courts cannot "judicially infer" a "fiduciary shield" that shortens the reach of Oregon's long-arm statute.

19 - FINDINGS AND RECOMMENDATION

None of the decisions cited above upon which defendants Hillman and Dwyer rely addressed jurisdiction over persons alleged to have violated Oregon securities laws, or analyzed the application of Rule 4J.  Though these decisions may support the conclusion that Oregon courts apply the "fiduciary shield" doctrine in actions that do not allege violations of Oregon securities laws, they do not support the conclusion that Oregon courts disregard the explicit terms of Rule 4J and infer a more limited reach of long-arm jurisdiction in actions alleging violations.  Even if those decisions did apply the "fiduciary shield" doctrine to actions alleging such violations, I would conclude that the doctrine is not applicable in actions alleging violation of Oregon securities laws because courts cannot judicially infer limitations that are contrary to explicit terms of the binding law of the state.

Plaintiffs' complaint unambiguously alleges that defendants Hillman and Dwyer violated Oregon securities laws, and Rule 4J unambiguously instructs Oregon courts to assert jurisdiction over nonresidents who are alleged to have violated such statutes.  The question is therefore whether Oregon's assertion of jurisdiction over defendants Hillman and Dwyer comports with the due process requirements of the United States Constitution.

2.  <u>Jurisdiction as to defendant Hillman</u>

The parties correctly agree that the individual defendants are not subject to general jurisdiction in this state.  The question is therefore whether this court may properly assert "specific" jurisdiction.

As noted above, for the purposes of analyzing the pending motions, the court assumes that defendant Hillman traveled to Oregon six times to conduct business for defendant Bally.  He traveled to Oregon twice to negotiate the Agreement with plaintiff, and traveled to Oregon at least two more times after the transaction had closed in order to inspect Nautilus facilities and meet with employees.  Defendant Hillman signed and provided plaintiffs an "Officer's Certificate" stating that defendant Bally had complied in all material respects with the agreements and covenants set out in the parties' Purchase Agreement, and that all the representations and warranties contained in Article IV of the Agreement were true and correct.  He also signed defendant Bally's Form 10-K, which significantly overstated Bally's earnings before the transaction was closed, and issued a press release that reflected the performance reported in that document.

In traveling to Oregon to negotiate the Agreement and to conduct business related to the purchase of Nautilus after the sale was concluded, defendant Hillman purposefully availed

21 - FINDINGS AND RECOMMENDATION

himself of the privilege of conducting business in this state, and his conduct and connection with the state were such that he could reasonably anticipate being brought into court here.

Defendant Hillman's signing of the "Officer's Certificate" affirming that the material representations and warranties set out in the Agreement were satisfied also constituted purposeful availment under the "effects test." As noted above, that test is satisfied if a defendant has committed an intentional act which was expressly aimed at the forum state and caused harm "the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." <u>Bancroft</u>, 223 F.3d at 1087. Accepting plaintiffs' allegations as true for the purposes of evaluating the motion to dismiss, defendant Hillman knew or should have known that the representations made in the "Officer's Certificate" were false, and made representations to induce plaintiffs to sell their shares of Nautilus stock and accept shares of Bally stock at artificially inflated prices. As alleged, defendant Hillman's conduct in signing the "Officer's Certificate" was directed at plaintiffs in Oregon, where defendant Hillman would have known the effects that would be suffered.

The jurisdictional requirement that the claim asserted arise out of or result from the defendant's forum-related

activities is satisfied as well because the harm of which
plaintiffs complain would not have occurred "but for"
defendant Hillman's alleged violation of Oregon securities
laws and the allegedly fraudulent material misrepresentations
and omissions he made related to the transaction.  Defendant
Hillman's negotiations in this state and alleged
misrepresentations and omissions concerning the value of
shares of Bally's stock were forum-related activities.

     Finally, the assertion of jurisdiction over defendant
Hillman is reasonable.  As noted above, the exercise of
jurisdiction is presumptively reasonable if a plaintiff
establishes a defendant's purposeful availment in the forum
state, and a defendant who has purposefully availed himself of
the privilege of conducting business in the forum must present
a compelling case to demonstrate that jurisdiction is
unreasonable.  Roth, 942 F.2d at 625.  Plaintiffs have made
the requisite showing of purposeful availment on defendant
Hillman's part, and defendant Hillman has not demonstrated
that the assertion of jurisdiction is unreasonable.  Though
litigating plaintiffs' claims in this forum is less convenient
than litigating in Illinois would be for defendant Hillman,
this defendant has not shown that the inconvenience he would
suffer in defending the action here would "constitute a
deprivation of due process."  Panavision Int'l, 141 F.3d at

23 - FINDINGS AND RECOMMENDATION

1323.  Defendant Hillman has not shown that litigating here would implicate any sovereignty issues between Oregon and Illinois, and Oregon has a strong interest in providing a forum for resolving disputes involving alleged violation of its securities laws.  Given that witnesses and evidence will likely be located in both Oregon and other states, it appears that this dispute can be as efficiently resolved here as elsewhere.  This forum can offer convenient and effective relief for plaintiffs.  Though Illinois could provide an alternative forum for resolution of the parties' dispute, there is no compelling reason to litigate this dispute in that forum instead of here in Oregon.

Defendant Hillman's motion to dismiss for lack of jurisdiction should be denied.

### 3. Jurisdiction as to defendant Dwyer

As noted above, defendant Dwyer was defendant Bally's Executive Vice President, CFO, and treasurer while the sale giving rise to this action was being negotiated.  Though defendant Dwyer did not participate in the negotiations of the sale, he signed the Agreement including the representations of which plaintiffs complain, in his capacity as CFO.  Defendant Dwyer did not travel to Oregon in connection with defendant Bally's purchase of Nautilus.  In his capacity as defendant Bally's CFO, defendant Dwyer was involved in preparing Bally's

24 - FINDINGS AND RECOMMENDATION

financial statements which were filed with the SEC, and which
were provided to the financial markets in press releases.
Along with defendant Hillman, defendant Dwyer signed Form
10-K, which was submitted to the SEC in March, 2000, that
included materially false information concerning defendant
Bally's performance.

Whether this court may properly assert jurisdiction over
defendant Dwyer presents a close question.  However, accepting
plaintiffs' allegations as true, I conclude that defendant
Dwyer's signing of the Agreement including the alleged
misrepresentations upon which plaintiffs' claims of securities
violations and fraud are based constituted purposeful
availment under the "effects test."  Plaintiffs have alleged
that defendant Dwyer knew or should have known that material
representations in the Agreement he signed were false, and
that this defendant intended to induce plaintiffs to sell
their Nautilus shares in exchange for artificially inflated
shares of defendant Bally's stock.  Plaintiffs allege conduct
that was expressly directed at them in Oregon, where the
intended harm was suffered, and where defendant Dwyer could
reasonably have anticipated the harm would be suffered.  This
is sufficient to satisfy the requirements of the "effects
test."

25 - FINDINGS AND RECOMMENDATION

The jurisdictional requirement that the claim asserted arise out of or result from the defendant's forum-related activities is satisfied as well because the harm of which plaintiffs complain would not have occurred "but for" defendant Dwyer's signing of a purchase Agreement which included the material misrepresentations alleged.

The remaining jurisdictional requirement--that the assertion of jurisdiction be reasonable--is satisfied as to defendant Dwyer for the same reasons it is satisfied as to defendant Hillman.

II. <u>Defendant Bally's Motion to Dismiss Counts 3 and 4 for Failure to State a Claim</u>[1]

   A. <u>Standards for evaluating motions to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)</u>

In evaluating a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party.  <u>Parks Sch. of Bus. v. Symington</u>, 51 F.3d

---

[1]Individual defendants Hillman and Dwyer join in defendant Bally's motion to dismiss the fraud claim.

1480, 1484 (9th Cir. 1995).  A claim should be dismissed only
if it appears beyond doubt that the plaintiff can establish no
set of facts under which relief could be granted.  Jacobsen v.
Hughes Aircraft Co., 105 F.3d 1288, 1292 (1997) (citing Conley
v. Gibson, 355 U.S. 41, 45-46 (1957)).

    B. Analysis

    1. Motion to dismiss third claim

    As noted above, plaintiffs' third claim alleges that
defendant Bally breached its obligation to provide correct
financial statements to plaintiffs, and its representation
that the financial statements it filed with the SEC were true
and correct.  As is also noted above, the transaction closed
on May 17, 2000, and the Purchase Agreement included a
provision stating that "[a]ll of the representations of [the
parties] contained in this Agreement and any and all claims
and causes of action for indemnification under this Article
VIII . . . shall terminate 18 months after the Closing Date."

    Defendant Bally contends that plaintiffs' allegations
fail to state a breach of contract claim upon which relief may
be granted because the claim is outside the limitations period
set out in the parties' Agreement.  I agree.  The Purchase
Agreement, which plaintiffs allege was breached, unambiguously
extinguished defendant Bally's representations and warranties
18 months after the transaction closed, and required

27 - FINDINGS AND RECOMMENDATION

plaintiffs to bring any claim for breach of contract within 18 months of closing.  The transaction closed on May 17, 2000, and the 18 month limitations period set out in the Purchase Agreement expired on January 17, 2002.  This action was filed on September 17, 2004, nearly three years after the representations and warranties expired, and the time during which any claim could be brought based upon those representations and warranties had elapsed.

The Purchase Agreement includes a choice of law provision stating that the Agreement shall be "governed and construed in accordance with the laws of the United States and the State of Oregon . . . ."  The United States Supreme Court has noted that "it is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period."  Order of United Commercial Travelers of America v. Wolfe, 331 U.S. 586, 608 (1947).  Under Oregon law, contracting parties may agree that an action for breach of contract must be brought within a period of time that is shorter than the statute of limitations otherwise applicable under state law.  See Ausplund v. Aetna Indemnity Co., 47 Or. 10, 22, 81 P. 577,

581 (1905) (if reasonable, parties' stipulation that action for breach of contract be brought within specified period will be upheld); Beck v. General Ins. Co., 141 Or. 446, 459, 18 P.2d 579 (1933) (enforcing two year limitation on time to bring action set out in insurance policy); Biomass One, L.P. v. S-P Constr., 103 Or. App. 521, 525-26, 799 P.2d 152, 154-55 (1990) (applying one year limitations for bringing an action for breach of contract set out in underlying agreement).  In Hemstreet v. Merrill Lynch Mortgage Capital, Inc., Civ. No. 03-318 HA, 2005 WL 196521 at *7 (D. Or. Mar. 13, 2005), Judge Haggerty applied Oregon law to dismiss a breach of contract claim because it was not brought within the one year allowed for bringing a claim set out in the parties' agreement.  Judge Haggerty noted that "it is settled general contract law that parties may contractually agree to shorten the applicable statute of limitations."  Id. at *5.

Plaintiffs contend that the 18 month statute of limitations set out in the parties' Purchase Agreement should not be enforced here because defendants deliberately concealed information concerning the truth of their representations until the contractual limitations period had expired.  I disagree.  Plaintiffs have cited, and I have found, no reported decisions applying Oregon law in which a court has held or implied that a "discovery rule" may negate the

29 - FINDINGS AND RECOMMENDATION

parties' express agreement as to the time in which a breach of contract claim may be asserted.  Plaintiffs cite <u>New Welton Homes v. Eckman</u>, 786 N.E. 2d (Ind. App. 2003), <u>vacated on other grounds</u>, 804 NE. 2d 11172 (Ind. App. 2003), as an example of a decision holding that the discovery rule may apply to an action alleging breach of contract in which the contract specifies a limitation on the time in which such an action may be brought.  This decision is not persuasive for two reasons.  First, the <u>Eckman</u> court applied Indiana law.  Second, the specific contractual provision on which the court based its decision stated that the limitations period began to run from the date of the alleged breach, and not from the date on which the contract was concluded.  <u>Id.</u> at 1174.  In the present action, unlike the situation addressed in <u>Eckman</u>, the contract precisely fixed the date on which the limitations period began to run as the date on which the Agreement closed.

Plaintiffs also contend that the 18 month limitation period set out in the parties agreement should not be enforced because they were "fraudulently induced into signing the Stock Purchase Agreement."  Pltff's Mem. at 28 (citing paragraph 5 of complaint).  However, plaintiffs do not set out any allegations suggesting that defendants fraudulently induced them to agree to the 18 month limitations period.  Likewise, they do not seek to rescind the entire Agreement, but instead,

in the breach of contract claim, seek to enforce provisions of the Agreement.  Plaintiffs cannot selectively seek enforcement of some provisions of the contract, while attacking other provisions on the grounds that the entire Agreement was procured by fraud.

Under Oregon law, parties may contractually fix periods of limitations that are shorter than those otherwise applicable by statute, so long as the time specified is reasonable.  The parties here fixed a reasonable limitation in a contract that plaintiffs generally seek to enforce. Defendants' motion to dismiss plaintiffs' third claim should be granted.


2. Motion to dismiss fourth claim

Plaintiffs' fourth claim alleges that defendants committed common law fraud by making material misrepresentations and omissions in the underlying transaction.

Defendant Bally contends that plaintiffs cannot prevail on their fraud claim because the limitations period set out in Section 8.06 required them to bring "any and all claims and causes of action" within 18 months of closing of the transaction.  It also contends that the fraud claim must be dismissed because it is an improper attempt to transform "what

31 - FINDINGS AND RECOMMENDATION

are essentially contract claims" to tort claims.  Deft.
Bally's Reply to Pltff's Response to motion to dismiss at 7.

These arguments are well taken.  The allegedly fraudulent
misrepresentations upon which plaintiffs' fraud claim is based
are the representations that defendant Bally's SEC filings and
financial statements regarding its 1999 revenues were
accurate, though they were not.  As noted above, the Agreement
specifically provided that all of the representations included
in the Agreement "and any and all claims and causes of action
for indemnification" would terminate 18 months after the
transaction closed.  No contractual terms restrict this
limitation to only claims for breach of contract.  Instead,
the limitations specifically apply to <u>all</u> claims and causes of
action for indemnification under Article III of the Agreement.
Section 8.03 indicates that a claim for indemnification
includes any sort of action brought either by a party to the
Agreement or by a third party that is based upon a breach of a
representation or warranty or on the inaccuracy of any
representation or warranty.  This provision is broad enough to
apply to either a breach of contract or a tort claim.

Based upon the terms of their Agreement, I conclude that
the parties contractually agreed that the representations
contained in the Agreement would expire, along with the right
to bring claims alleging either a breach of contract or a

tort, 18 months after the transaction closed.  The parties
have cited, and I have found, no reported decisions applying
Oregon law holding that parties cannot agree to a reasonable
limitations period for tort claims that is shorter than that
which would otherwise apply by statute.  In <u>Hemstreet</u>, 2005 WL
196521 at *7, the court applied the limitations period agreed
upon by the parties to tort as well as breach of contract
claims.  In the absence of contrary authority, I find no
reason to reach a different result here.

I also agree with defendant Bally's contention that the
parties had contractually agreed that any inaccurate
representations or warranties would constitute a breach of
contract which would be subject to the limitations period set
out in their agreement.  Plaintiffs have clearly pleaded a
breach of the warranty as to the accuracy of the
representations.  Accordingly, I recommend granting
defendants' motion to dismiss plaintiffs' fraud claim.


3. <u>Compliance with Rule 9(b)</u>

In its memoranda, defendant Bally contends that the
fourth claim should also be dismissed for failure to set out
the allegations of fraud with the particularity required under
Rule 9(b).  I do not reach this issue because it is not raised
as a part of the formal motion to dismiss, and because there

is no certification, as is required under Local Rule 7.1, that the parties have tried to resolve this issue through conference.  In addition, if my recommendation to dismiss the fraud claim on other grounds is adopted, the Rule 9(b) issue will be moot.

## CONCLUSION

The individual defendants' motion to dismiss for lack of jurisdiction (#31) should be DENIED.  Defendant Bally's motion to dismiss the breach of contract and fraud claims for failure to state claims upon which relief may be granted (#28) should be GRANTED.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due September 2, 2005.  If no objections are filed, the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections.

If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 17th day of August, 2005.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge