UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                      )
FIT TECH, INC., PLANET                )
FITNESS CENTER, INC., PLANET          )
FITNESS CENTER OF MAINE, INC.,        )
PLANET FITNESS CENTER OF              )
DARTMOUTH, INC., PLANET               )
FITNESS CENTER OF SALEM, INC.,        )
PLANET FITNESS CENTER OF              )
BRIGHTON, INC., STRATFORD             )
FITNESS CENTER, INC., DAVID B.        )
LAIRD and SCOTT G. BAKER              )
     Plaintiffs,                      )
                                      )
          v.                          )    05-CV-10471-MEL
                                      )
BALLY TOTAL FITNESS                   )
HOLDING CORP., HOLIDAY                )
UNIVERSAL, INC., PAUL TOBACK,         )
LEE HILLMAN, and JOHN DWYER.          )
     Defendants.                      )
                                      )
```

MEMORANDUM AND ORDER

LASKER, D. J.

Paul Toback, Lee Hillman, and John Dwyer move separately to dismiss for lack of personal jurisdiction in this action stemming from the sale of a group of fitness centers in 2002.

I. Background

Bally Total Fitness ("Bally") and Holiday Universal ("Holiday") acquired a group of fitness centers, collectively

known as Planet Fitness, from plaintiffs by a Purchase Agreement signed on March 15, 2002.  Defendants were officers of Bally at the time of the sale.  Plaintiffs assert five causes of action: (1) breach of the asset purchase agreement's covenant of good faith and fair dealing by Bally and Holiday; (2) deceit, such as defendants' misrepresentations made with the intention of inducing plaintiffs to accept partial payment in the form of Bally stock; (3) equitable recession of the Purchase Agreement; (4) violation of M.G.L. c.93A; (5) unfair and deceptive trade acts or practices in violation of 815 I.L.C.S. 505/2 (Illinois' version of M.G.L. c.93A); and (6) violation of the Massachusetts Uniform Security Act, M.G.L. c.110A, §410(a)(2).

Toback, Hillman, and Dwyer each allege that, under Massachusetts law, this court has no jurisdiction over him.  Each moves to dismiss the complaint against him for lack of personal jurisdiction on two grounds: (1) that the Massachusetts long-arm statute, M.G.L. ch.223A, §3, does not reach them, and (2) that jurisdiction would not comport with the requirements of due process.

Jurisdiction over the person can be either "general" or "specific."  General jurisdiction depends on the existence of "continuous and systematic" contacts, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984), while specific jurisdiction exists when there is a "demonstrable nexus between a

plaintiff's claims and a defendant's forum-based activities." Donatelli v. National Hockey League, 893 F.2d 459, 462 (1st Cir. 1990). The Massachusetts long-arm statute, M.G.L. ch.223A, §3, governs the terms of specific jurisdiction.

## II. Paul Toback

Toback was the Chief Operating Officer ("COO") and Executive Vice President of Bally at the time the Purchase Agreement was signed in 2002. He became Chief Executive Officer ("CEO") and President of Bally after the effective date of the Purchase Agreement. He is a citizen and resident of Illinois, and asserts that he has not lived, worked or vacationed in Massachusetts; that he was not involved in the negotiation or execution of the Purchase Agreement in any way; and that prior to the execution of the Purchase Agreement, he had been to Massachusetts only once to tour the health clubs, although since that time, he has made several visits to inspect the clubs.

Plaintiffs assert that Toback was intimately involved in the negotiation of the Purchase Agreement, that in connection with the negotiating the agreement, he made representations to the plaintiffs which he knew to be untrue, and that he repeated these misrepresentations to plaintiffs on several occasions, including during his initial trip to Massachusetts.

General jurisdiction over Toback does not exist because there is no evidence that he has ever engaged in "continuous and

3

systematic activity, unrelated to the suit," in Massachusetts. United Electric, Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Plaintiffs do not contest Toback's statement that the only times he has been in Massachusetts are: (1) one visit to Massachusetts prior to the signing of the Purchase Agreement in which he met with Laird and Baker; and (2) periodic visits since he became CEO and President to inspect the clubs. Toback has not engaged in "continuous" or "systematic activity" by such visits and accordingly he is not subject to the Court's general jurisdiction.

Plaintiffs do, however, make a showing that jurisdiction exists over Toback under the Massachusetts long-arm statute, M.G.L. ch.223A, §3. See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)("[W]e take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."). Plaintiffs allege that Toback met with them during his initial visit to Massachusetts and made representations regarding club management, supplemental services, and negotiated other terms of the Purchase Agreement. Any of these acts alone constitutes evidence that Toback transacted business in Massachusetts in connection with the issues presented here, and accordingly jurisdiction over him exists under M.G.L. ch.223A,

4

§3(a).  See United Electric, 960 F.2d at 1087 ("Both federal and state courts have regularly construed the 'transacting any business' language of the statute in a generous manner....even somewhat exiguous acts on a defendant's part can, at times, suffice to satisfy the long-arm statute's threshold for transacting business."); Tatro v. Manor Care, Inc., 416 Mass. 763, 771 (1994)("A claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State."); Landmark Bank v. Machera, 736 F. Supp. 375, 383 (D. Mass. 1990)("The 'transacting any business' clause in subsection 3(a) has been broadly interpreted as applying 'to any purposeful acts by an individual, whether personal, private, or commercial.'")(quoting Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986)).

However, plaintiffs must also show that "the exercise of jurisdiction pursuant to [the long-arm] statute comports with the strictures of the Constitution." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). Compliance with due process consists of three components: relatedness, purposeful availment (often known as minimum contacts), and reasonableness.  Massachusetts School of Law, 142 F.3d at 34.

Relatedness exists if the claims "arise out of, or [are] related to, the defendant's in-forum activities."

Helicopteros Nacionales, 466 U.S. at 415. Plaintiffs allege that Toback engaged in forum-based activities which were "instrumental in the formation of the contract." Massachusetts School of Law, 142 F.3d at 35 (citing Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983)). Toback's visit to Massachusetts, during which plaintiffs assert he discussed and negotiated the terms of the sale, is related to the claims. The relatedness factor is therefore satisfied.

Purposeful availment is a safeguard that prevents violation of "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Jurisdiction cannot be premised on acts which are "random, isolated, or fortuitous." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). The focus is on whether the defendant, through an act, "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." United Electric, 960 F.2d at 1088 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958). Toback's visit to Massachusetts constituted purposeful availment because he entered the state voluntarily to meet with Laird and Baker and engaged in business discussions related to the Purchase Agreement. See Burger King v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985)("So long as it creates a substantial connection with the forum, even a single act can

6

support jurisdiction.")(citation omitted).  Toback's meeting with Laird and Baker was "deliberate," and through his discussions in that meeting, Toback forged "continuing obligations" between himself and residents of Massachusetts which support the exercise of jurisdiction.  <u>Id</u>. at 476.

"Reasonableness" is determined by consideration of the so-called "Gestalt" factors: "(1) defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interest of all sovereigns in promoting substantive social policies."  <u>United Electric</u>, 960 F.2d at 1088.  Consideration of these factors, however, mainly serves "to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  <u>Burger King</u>, 471 U.S. at 477.  Given the findings above as to minimum contacts, it is unnecessary to engage in a detailed analysis of these factors, although it is noted that Toback has not produced "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  <u>Id</u>.

Accordingly, Toback's motion to dismiss for lack of personal jurisdiction is DENIED.

### III. Lee Hillman

Hillman was President and CEO of Bally at the time the Purchase Agreement was signed. He is a citizen and resident of Illinois and asserts that he does not work, reside, conduct business, own property or transact personal business in Massachusetts. Hillman admits that he had one conversation with Baker, but contends that it took place in Illinois and was initiated by Baker. Hillman also asserts that he did not negotiate or sign the Purchase Agreement, and that he left his position as President and CEO before the Earn Out Amount was calculated. Plaintiffs allege that Hillman traveled to Massachusetts to visit the clubs before the sale. They also contend that Hillman was responsible for the preparation of Bally's financial statements and SEC filings and therefore must have been aware that false statements and filings would be represented as accurate in Massachusetts.

General jurisdiction over Hillman does not exist because there is no evidence of his engagement in any "continuous and systematic activity" in Massachusetts. United Electric, 960 F.2d at 1088. His trip to visit the clubs in Massachusetts does not satisfy the general jurisdiction standard.

Nor does jurisdiction exist under the long-arm statute because Hillman is not alleged to have transacted business in Massachusetts. Unlike Toback, Hillman never met with Laird and Baker in Massachusetts and he is not alleged to have discussed

the sale within Massachusetts. Hillman cannot be said to have invoked "the benefits and protections of the forum's laws" in a "deliberate" fashion. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112-13 (1st Cir. 1997).

Moreover, plaintiffs do not present any evidence that Hillman caused a tortious injury in Massachusetts under M.G.L. ch.223A, §3(c), nor do they allege that Hillman "knowingly" sent a false statement into Massachusetts. Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972). Plaintiffs do not assert that Hillman knew anything about the negotiations or Purchase Agreement other than that they existed, or that he intended any alleged misrepresentations in financial statements or filings to be "relied upon to the injury of a [Massachusetts resident]." Id. Plaintiffs' allegations that Hillman must have known that misrepresentations in the financial statements and SEC filings would cause damage in Massachusetts necessitates "credit[ing] conclusory allegations or draw[ing] farfetched inferences," a step beyond the requirements of prima facie analysis. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

### IV. John Dwyer

Dwyer was Chief Financial Officer ("CFO") of Bally at the time of the Purchase Agreement. He is a citizen and resident of Illinois and alleges that he has never communicated with the

plaintiffs in Massachusetts, met with them, or directed any communication into Massachusetts. Plaintiffs contend that, because of Dwyer's position as CFO, he must have known that the SEC filings and financial statements were falsely being represented as accurate and sent into Massachusetts where plaintiffs relied on them.

Plaintiffs do not allege that Dwyer has engaged in "continuous and systematic activity" in Massachusetts. United Electric, 960 F.2d at 1088. Dwyer asserts that he has never resided in or owned real estate in Massachusetts, conducted personal business in Massachusetts or with Massachusetts residents, or traveled consistently to Massachsuetts. His contacts are therefore not sufficiently "extensive and pervasive" to confer general jurisdiction. In re Lernout & Hauspie Securities Litigation, 337 F. Supp. 2d 298, 320 (D. Mass. 2004).

Nor does jurisdiction exist under M.G.L. ch.223A, §3(a) because plaintiffs do not allege that Dwyer has transacted business in Massachusetts. Although plaintiffs do allege under §3(c) that Dwyer caused a tortious injury in Massachusetts by filing false statements, jurisdiction does not exist because Dwyer did not direct the financial statements and SEC filings into Massachusetts. Dwyer prepared the statements outside of Massachusetts and they were released by others, not by Dwyer. There is no evidence that he was responsible for their appearance

in Massachusetts.  See Protective Factors Inc. v. American Broadcasting Companies, Inc., 2002 WL 1477174 at *3 (D. Mass. 2002)("It is probably true that a person who is interviewed by a national media outlet can foresee that her interview will be disseminated to distant jurisdictions.  But it is a further step to conclude that such a person has a reasonable expectation that she can be sued anywhere the broadcast is aired."); Cf. Murphy, 460 F.2d at 664 (finding that jurisdiction exists when defendant knowingly sends a false statement into the forum state).  Plaintiffs do not allege any action by Dwyer, other than publishing the statements and filings, which directed the statements specifically into Massachusetts.  Jurisdiction therefore does not exist over Dwyer since there is no showing that he transacted business, or caused a tortious injury to occur, in Massachusetts.

      *      *      *

 Accordingly, Toback's motion to dismiss for lack of personal jurisdiction is DENIED and the motions to dismiss for lack of personal jurisdiction as to Hillman and Dwyer are GRANTED.

 It is so ordered.


Dated: April 4, 2006
    Boston, Massachusetts   /s/ Morris E. Lasker
                U.S.D.J.